Sheehy vs. Duffy and another.

*By the Court.*— Judgment affirmed.

SHEEHY, Appellant, vs. DUFFY and another, Respondents.

*October 25 — December 11, 1894.*

(1) *Judgment* non obstante veredicto.   (2) *Court and jury: Amending special finding.*   (3, 4) *Attorney and client: Contract as to fees: Advancing money for expenses: Condition precedent: Rescission: Waiver.*

1. Judgment *non obstante veredicto* should not be rendered for defendant.

2. Where there is evidence to support a material finding in a special verdict, such finding cannot be amended by the court and a different one, in whole or in part, substituted for it.

3. Where, by a written contract, attorneys agreed to prosecute a claim for a certain fee in case of a recovery and without pay in case of a failure to recover, and it was provided that they should commence suit and should "contract or otherwise obtain the lowest

charges for services and other necessary disbursements and expenses to be furnished by" their client, and should litigate the claim (unless paid without) as far as it could be carried, *it seems* that the provision in respect to the payment of expenses by the client was an independent stipulation, and not a condition precedent for the mere nonperformance of which the attorneys might rescind the contract.

4. An action was brought by the client in such a case against her. attorneys to recover moneys retained by them, out of the amount recovered, in excess of the fee stipulated in the contract. Upon the evidence,— showing, among other things, that because of the client's inability the attorneys had made advances to meet expenses of the litigation; that more than three years after the making of the contract, and while the litigation was still pending, the client wrote offering to pay them an additional fee in case of recovery; that they then claimed that the contract had been abandoned before anything was done under it, and that their employment was a general one; that the client insisted that the contract was still in force, and suggested that she would employ other attorneys; that they replied that she could not change attorneys without a settlement of the amount due them; that she finally wrote that, in view of their disposition and purpose to hold and care for the case, she was willing to let the questions in respect to the contract and fees rest for future settlement; and that the attorneys thereafter continued to act in the case and to make advances,— it is *held* that the attorneys had waived all right to say that the contract had been rescinded or abandoned because of the client's failure to advance money for expenses.

APPEAL from a judgment of the circuit court for Brown county: SAMUEL D. HASTINGS, JR., Circuit Judge. *Reversed.*

On June 9, 1886, the plaintiff entered into a contract with the defendants, who were copartners as attorneys, by which they were to prosecute her claim and agreement assigned to her by one Colton against St. Patrick's Congregation of Fond du Lac, and she agreed to pay them in full for such services $150 in case of recovery, but, if they did not recover the amount claimed to be due, or some part of it, they were not to charge or receive anything for their services from that date; their previous services having been adjusted

at $100. They were to "commence suit against the members of said congregation, and . . . to contract or otherwise obtain the lowest charge for services and other necessary disbursements and expenses to be furnished" by the plaintiff, "and to litigate said claim (unless paid without) as far as the same can be carried." The plaintiff alleged that the defendants brought suit accordingly, and recovered and collected therein the sum of $3,117.58; that they paid her only $1,142.15; that, after deducting the amount due them under the contract, there remained due from them to the plaintiff $1,725.43, with interest, for the recovery of which she brought this action.

The defendant *Duffy* answered, in substance, that immediately after making the agreement it was discovered that the congregation of St. Patrick's Church was an unincorporated association; that he was a member of it, and that the action would have to be brought against the individual members, and he would therefore be a necessary party to the action, of all of which the plaintiff had notice, and that for this reason the agreement was canceled; that the plaintiff canceled and abandoned the said contract, and never performed or offered to perform it. He denied that the action was prosecuted or said money was collected by himself and *McCrory*, as her attorneys, but that it was conducted and the money collected by *McCrory* and the firm of Shepard & Shepard, as her attorneys.

The defendant *McCrory* insisted in like manner that the contract had been canceled and abandoned; that the plaintiff never performed or offered to perform any part of it; that the action was brought and prosecuted by himself and Shepard & Shepard, as her attorneys, against the individual members of the congregation, his codefendant *Duffy* being a defendant with the others, all with the consent and approval of the plaintiff; that he and Shepard & Shepard collected the money recovered, and, after retaining a rea-

sonable and just fee for their services and their actual and necessary expenses, there remained due her $1,142.15, which had been paid to her before suit.

Upon trial before a jury the defendants objected to the reception of any evidence under the complaint, upon the ground that by the terms of the contract advancement of costs and expenses of litigation was a condition precedent to the collection of the money, and the complaint did not allege performance of that condition or any excuse for non-performance; but the motion was denied for the time being, and after the plaintiff had rested the defendants severally moved for a nonsuit on substantially the same grounds, and also on the ground that the proof failed to show any cause of action in favor of the plaintiff against the defendants. The motion was denied.

There was no dispute as to the amount of the expenses and disbursements of the defendants, and it was not disputed but that the charges for fees were reasonable in amount. The evidence was directed to the question whether the written contract had been canceled and rescinded or abandoned, and whether the services rendered by defendants were performed under that contract. The court submitted but one question to the jury, namely: "Did the defendants, as copartners, prosecute the action of *Sheehy against Blake et al.*, and recover and collect the judgment, under the written contract made June 9, 1886, between them and *Mrs. Sheehy?*" To this question the jury answered, "Yes." The plaintiff, on the evidence and special verdict, moved for a judgment in her favor against the defendants for $1,106.43, damages and costs, etc. The defendants severally, upon the evidence, on the minutes, and upon the law applicable to the facts proven, moved the court to enter judgment in favor of the defendants *non obstante veredicto* on the undisputed evidence, on the ground that on account of the failure of the plaintiff to furnish the necessary dis-

bursements and expenses in the prosecution of the action, whereby her attorneys were compelled to furnish them out of their own means or abandon the litigation, the defendants had the right to treat the contract of June 9, 1886, as abandoned and rescinded by the plaintiff; that she wholly failed to perform the condition precedent upon her part by the payment of said disbursements and expenses, and that they were therefore entitled to recover the moneys advanced and expended, and reasonable compensation for their services as attorneys as upon a *quantum meruit,* and they also moved for a new trial for similar and other reasons.

The court, upon the hearing of these motions, ordered, "on the undisputed evidence in the case, that the verdict be amended and modified so as to be, and the court on the undisputed evidence hereby finds, as follows, to wit: (1) That the defendants, as copartners, prosecuted the action of *Sheehy against Blake* under the contract of June 9, 1886, until the plaintiff failed to perform such contract on her part. (2) That during the progress of said action of *Sheehy against Blake* the plaintiff failed to perform such contract on her part, and thereupon said contract was rescinded and abandoned by the parties to it, and no new contract was expressly made in its place. (3) That the part of the recovery in said action of *Sheehy against Blake* not paid to the plaintiff is the reasonable value and amount of the services and disbursements of plaintiff's attorneys in prosecuting said action, and was retained by and paid said attorneys." The court ordered judgment entered on said verdict as thus amended and modified in favor of the defendants, dismissing the action with costs, from which the plaintiff appealed.

For the appellant there was a brief by *F. W. Houghton* and *George Hilton,* and oral argument by *F. W. Houghton.* They argued, among other things, that the agreement of the plaintiff to pay costs, etc., was an independent agreement and not a condition precedent. *Hoffman v. King,* 70

Sheehy vs. Duffy and another.

Wis. 372; *Mill Dam Foundery v. Hovey*, 21 Pick. 417; *Cutter v. Powell*, 2 Smith, Lead. Cas. (9th Am. ed.), 1212, and note on p. 1220; *Norrington v. Wright*, 21 Am. Law Reg. 395, 398, and note.

For the respondents there was a brief by *Greene & Vroman*, and oral argument by *Geo. G. Greene*. They contended, *inter alia*, that the court had power to amend the verdict according to the undisputed facts. *Dahl v. Milwaukee C. R. Co.* 65 Wis. 371; *Mayhew v. Mather*, 82 id. 355; *Ohlweiler v. Lohmann*, id. 198. The failure of the plaintiff to perform the contract on her part entitled the defendants, or Shepard and *McCrory*, to disregard it and receive what their services were reasonably worth. *Dubois v. D. & H. Canal Co.* 4 Wend. 285; *Noble v. Bellows*, 53 Vt. 527; *School Dist. v. Hayne*, 46 Wis. 511; *Bradley v. Denton*, 3 id. 557.

PINNEY, J. 1. The finding of the jury that the services of the defendants were rendered under the written contract consisted of a single point or proposition, and disposed of the substance of the issue in favor of the plaintiff, leaving it as a mere matter of computation upon undisputed facts to ascertain for what amount judgment should be given in her favor. With this verdict remaining in force, judgment could not have been given for the defendants. Judgment *non obstante veredicto* is given where the defendants' plea confesses the action and does not sufficiently avoid it. 2 Tidd Pr. 920. It will be given where the defendant obtains a verdict, and the defense put upon the record is not a legal defense to the action, in point of substance; but not unless the merits of the case are very clear. Grah. Pr. 647. But a defendant cannot move for judgment *non obstante veredicto*. *Smith v. Smith*, 4 Wend. 468; *Schermerhorn v. Schermerhorn*, 5 Wend. 513; *Bellows v. Shannon*, 2 Hill, 86.

2. The verdict of the jury is clearly supported by the evi-

dence in the case as it was argued and submitted to the jury. The trial judge, in his reasons for giving judgment for the defendants, contained in the record, states in substance that the only defense set up in the answers was that the written contract was mutually abandoned by the parties and a new contract made with *Mr. McCrory;* that this was fully litigated and passed upon by the jury, and " it cannot be questioned that the evidence warrants the finding that no new contract was made, and that the defendants proceeded at first under the contract of June 9, 1886, and employed Mr. Shepard to assist them;" that, although the question was presented whether this contract was not abandoned afterwards and before the work was completed, yet no reference was made to this question in the lengthy argument to the jury, and as no request was made for instructions on that point none were given, though the point was raised by the motions for nonsuit and for a direction to the jury to find for the defendants. We do not understand, however, that the point was specifically stated, but that, under the motions, it was open to the defendants. Without setting aside the verdict, the court gave judgment for the defendants on the ground that by the uncontradicted evidence they were entitled to it, having first made a finding *amending* the verdict as stated, to the effect that the contract was rescinded and abandoned by the parties and no new one was expressly made in its place, and therefore the defendants were entitled to compensation for services, both before and after the termination of the contract, as on a *quantum meruit.* It was error to thus amend the verdict. In *Schweickhart v. Stuewe,* 75 Wis. 157, 160, it was announced that " the utmost extent to which this court has gone in authorizing the trial courts to disregard the special verdict rendered by a jury when such verdict is wholly unsupported by the evidence, is to set aside such verdict, and then, in its discretion, and not as an absolute duty, to enter judgment in accord-

ance with the undisputed evidence in the case, or to set aside the verdict entirely and grant a new trial." And the previous cases on the subject were cited. There was, we think, evidence in support of the finding of the jury as made, and therefore the finding could not be amended by the court and a different one, in whole or in part, substituted in its stead. *Ohlweiler v. Lohmann*, 82 Wis. 198, 203. The proper course was to grant a new trial; and where judgment of reversal is given on the ground of an erroneous amendment of a verdict in a material respect, it is the practice of this court to award a new trial, as the circuit court ought to have done, if the verdict was not in accordance with the merits, instead of amending the verdict. To sustain the course pursued in this case would be to place special verdicts in legal actions substantially on the footing of verdicts in equitable actions as on a feigned issue, and make them merely advisory.

3. The evidence which it is supposed supports the view that the written contract was rescinded and abandoned, because the plaintiff did not make the necessary advances for expenses and costs, after the parties had acted on it for more than three years, is found in certain letters which passed between the defendants and Mr. Sheridan, of Paola, Kan., the attorney and agent of the plaintiff where she resided, in the fall of 1887. The action in the meantime had been heard on demurrer in the circuit court and in this court on appeal. It had been removed to the United States circuit court, and remanded for want of jurisdiction, and a trial had been had, and verdict and judgment given for the plaintiff, and an appeal therefrom was pending in this court. It appears that the plaintiff remitted $75 to the defendants, February 5, 1887, for costs, etc. In October following the defendants sent her a bill for costs, amounting to $134.04, and asked for a remittance, and in November the defendants were informed that it was difficult for her to raise the money, and that she could not do it before the next summer. In De-

cember of that year the defendant *McCrory* wrote in relation to the case and its progress, but made no allusion to the matter of costs.   January 13, 1888, the case was still progressing, and Sheridan wrote defendants, saying that *Mrs. Sheehy* might be able to send money soon.   The correspondence shows that *Mrs. Sheehy* was in financial straits, and it was very difficult for her to furnish the necessary funds. May 12, 1889, Sheridan writes defendants that in view of circumstances which he states he has explained to *Mrs. Sheehy*, they "ought to have, in addition to the amount named in the contract," all costs that can be recovered.   "I have given *Sheehys* copy of the contract. . . . I want all to understand it alike."   The defendant *McCrory* wrote in May, July, and September in relation to the progress of the case, but made no allusion to the contract or costs; but October 22d he asked for a remittance, saying, "Since we have paid out considerable sums of money, we trust you will see that *Mrs. S.* will promptly remit."   October 26th Sheridan writes that the *Sheehys* are hard up, and that "in view of the importance of winning in the supreme court, *Sheehys* authorize me to say that in case of recovery they will allow you $200 *as fee in addition to the amount provided in your contract.*"   The defendant *McCrory* replying, November 14, 1889, says: "*Mr. Duffy*, as a lawyer, has nothing to do with the case, and my own compensation and Mr. Shepard's will be fixed at a reasonable amount, in view of the labor and results."   And November 18th Sheridan replied, expressing surprise at the letter, and saying, "Under no circumstances would I consent to throw aside the contract or change its terms;" and repudiating all contract relations with Shepard, or liability for his services, adding, "If you will not attend to the case any further, I want to know it at once, so that I can make other arrangements to have it taken care of."   November 30th Sheridan writes to defendants: "I have sufficient reason to at once employ other attorneys in

your place.  I will be compelled to do so very soon, unless
we come to an understanding." *Mr. McCrory* answered
December 7th, at length, insisting that, "if you propose to
change attorneys in *Sheehy* case, you certainly cannot do it
under Wisconsin laws without settlement of the amounts
due Shepard & Shepard and myself," and insisting that
Shepard & Shepard were employed, to the knowledge of the
plaintiff, and that *McCrory* had never recognized the con-
tract or held himself bound by it, and that "all steps from
first to last have been taken without reference to it;" that
Shepard and himself "took up the case without any bargain
as to fees;" and "that *Mrs. Sheehy* will not appear in a very
meritorious light, trying to enforce an alleged contract to
which she has not conformed, because she has failed to 'fur-
nish funds to reimburse Mr. Shepard and me for our cash
outlays," amounting at this date, it would seem, to about
$380.  December 12th Mr. Sheridan answers, discussing the
matters in difference, saying, among other things: "I am
willing, in view of your apparent disposition and purpose to
hold and care for the case, to let those questions [in respect
to the contract and Shepard's fees] rest for *future settle-
ment*, as I do not want another case in the middle of this.
You know my views about the contract; I know yours; and
there let it rest for the present.  I trust you mean to do
your best with the case."  The matter in dispute was not
again referred to by either party, so far as the evidence
shows, until after the judgment recovered had been affirmed,
while in the meantime several communications had passed
between them in respect to the condition and progress of
the litigation.  When the judgment had been collected, the
dispute was resumed.

It is doubtful whether the provision in the contract in re-
spect to the payment of disbursements and expenses can be
regarded as a condition precedent, for the mere nonperform-
ance of which the defendants might rescind the contract;

and it does not appear that compliance with it by the plaint-
iff was so far fundamental that her failure in this respect
could *per se* be treated by the defendants as a withdrawal
from or abandonment of the contract on her part, or of
notice of intention of such withdrawal or abandonment.
The provision seems rather to be but the expression of what
the law would imply where an attorney had been employed
to conduct a litigation, and seems to fall within the class of
cases mentioned in *Mill Dam Foundery v. Hovey*, 21 Pick.
439, that: "When the act of one is not necessary to the act
of the other, but would be convenient, useful, or beneficial,
yet, as the want of it cannot prevent the performance, and
the loss and inconvenience can be compensated in damages,
the performance of the one is not a condition to the obliga-
tion to perform by the other." *Hoffman v. King*, 70 Wis.
383. Her promise seems to be an independent stipulation;
but if it was a condition precedent the case is utterly desti-
tute of any evidence tending to show that the defendants
ever intended or attempted to act upon it and rescind the
contract. They contended, when the question of compensa-
tion was first raised, that it had been rescinded and aban-
doned more than three years before, and before anything had
been done under it; and have insisted throughout that their
employment was a general one, without any stipulation as
to the amount of their compensation. No claim of defense,
such as stated in the finding of the trial judge, was made in
the answers or insisted on until after the verdict; and the
claim of rescission or abandonment is utterly inconsistent
with the conduct of the parties, and particularly of the de-
fendants. A party intending to rescind an executory con-
tract must, in general, within a reasonable time, give some
notice, although it need not be express, of his intention, to
the other party. 2 Pars. Cont. 678, 681; 21 Am. & Eng.
Ency. of Law, 84; *Carney v. Newberry*, 24 Ill. 203; *Parmlee
v. Adolph*, 28 Ohio St. 10; *Cain v. Guthrie*, 8 Blackf. 409.

There is no evidence showing or tending to show that the plaintiff ever desired or intended to rescind the contract or abandon it. On the contrary, she has consistently insisted on its provisions. The testimony on this subject consists entirely of the written correspondence, and we do not think it can be held that the only fair inference to be drawn from it is in favor of rescission or abandonment on the part of either. The letters, in a certain sense, may be said to be undisputed, but, as there is in them no expression of any intention or purpose on the subject, whatever they may prove in respect to it is a matter of inference, founded upon them and the circumstances of the case and acts of the parties, and this inference is to be drawn by the jury and not by the court. *Etting v. Bank of U. S.* 11 Wheat. 75; *Iasigi v. Brown,* 17 How. 183; *Barreda v. Silsbee,* 21 How. 168.

The defendants, during the three years of litigation before the dispute occurred in respect to the terms of employment, had advanced quite a considerable sum of money to meet the necessary expenses of carrying on the litigation. They appear to have done so because the plaintiff was unable to furnish the necessary means of the litigation, and in so doing paid out money for her use and benefit, and they had an undoubted right to retain these advances out of the moneys collected on the judgment. It must be held that they consented to the creation of the relation of debtor and creditor between them, and up to October 26, 1889, waived any right to consider the contract rescinded or abandoned because of her failure to furnish the necessary funds. Looking to what occurred immediately after, we find that the defendants, so far from electing to withdraw from her service and to consider the contract at an end, insisted on the right to control the case and carry it on, unless reimbursed for fees and moneys advanced. With perfect knowledge that the plaintiff refused " to throw aside the contract or change its terms," and being informed that she would be compelled very soon

to employ other attorneys in their place unless they came to an understanding, the defendants still continued in her employment, looking after the case as before; Sheridan, her agent, having proposed on the 12th of December, 1889, "in view of your [their] apparent disposition and purpose to hold and care for the case, to let those questions [in respect to the contract and Shepard's fees] rest for future settlement," saying also: "You know my views about the contract; I know yours; and there let it rest for the present." The defendants not only went on with the litigation and rendering services as before, but continued to advance the necessary expenses of it, without insisting on immediate reimbursement. Although they did not expressly assent to Sheridan's proposition, they continued to act in the employment and make such advances to the end of the litigation. Their course in this respect admits of no fair construction but that they were willing to take the chances of maintaining their contention in respect to the matter of compensation. It was optional with them at this time to take this course, or insist upon settlement and reimbursement for their services and disbursements, and to retire from the case. They chose to remain in it as proposed. We think it very clear that they waived by so doing all right to say that the contract was either rescinded or abandoned by what took place in the fall of 1889, and it is not now open to them, upon the case as it now stands, to maintain that the contract was rescinded or abandoned. Their client lived in a distant state. The exigencies of the litigation required frequent attention. If they intended to treat the contract as rescinded or abandoned, they should have advised the plaintiff accordingly, that she might select parties to care for the litigation in their stead.

For these reasons the finding of the circuit court must be set aside, and the judgment of the circuit court thereon reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.