Conroy, Respondent, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Appellant.

*February 6 — May 21, 1897.*

*Railroads: Injuries to passenger viewing wreck: Explosion of oil tank: Contributory negligence: Inconsistent special verdict: Setting aside findings: Judgment: Appeal.*

1. A passenger on a railway train which has been stopped by burning tanks of oil on the track, who, from mere motives of curiosity and pleasure, leaves a place designated as a temporary station at a safe distance from the fire, and goes within eighty-five feet of the fire, and remains there for some time, thereby exposing himself to ob-

96 243
96 174
96 243
†104 602
96 243
108 324
108 593
96 243
110 ²362
96 243
114 ⁷43
s38 LRA 419
57 LRA 890n

vious danger, is guilty of such contributory negligence as will prevent a recovery for injuries caused by an explosion of one of the tanks.

2. *Findings of the special verdict in such a case that if plaintiff had remained at the temporary station he would not have been seriously injured; that he unnecessarily and from motives of curiosity and pleasure approached much nearer the burning cars; and that his injuries were caused by reason of his so going nearer thereto,—* are *held* to be inconsistent with other findings that the defendant in the exercise of ordinary prudence should have known of the plaintiff's position in time to warn him of the danger from the burning car; that it ought to have anticipated that plaintiff would go nearer the car and thus incur such danger; that the warning given plaintiff was negligently and insufficiently given; that plaintiff was not guilty of contributory negligence; that defendant did not exercise reasonable care and prudence in designating a place where plaintiff might take the train; and that its officers and agents were guilty of negligence which was the proximate cause of plaintiff's injuries. No judgment should therefore have been given upon the verdict.

3. The relation of carrier and passenger is *held* not to have ceased to exist, although the actual transit had been interrupted for the time being by the wreck on the track and plaintiff had voluntarily left the temporary station, to which he had been transferred to await another train, for the purpose of obtaining a nearer view of the wreck.

4. The danger of an explosion of the burning tank of oil was not hidden or concealed so as to render the railroad company liable for injuries occasioned thereby to an adult who had approached the wreck from motives of curiosity, without an invitation, express or implied.

5. The railroad company and its agents were not bound to restrain by physical force a passenger of ordinary intelligence in order to keep him out of such a danger, which was as obvious to him as to them.

6. The railroad company in such case was bound to the exercise of only ordinary care and prudence to protect the plaintiff from danger, in view of the situation and existing circumstances. It was therefore erroneous to instruct the jury "that it is the duty of the carrier to exercise extraordinary vigilance, aided by the highest skill, and to exercise the highest degree of care, to prevent the interposition of any obstacle to expose the plaintiff to danger while waiting for the train to arrive:" and the error was not cured by a subsequent correct statement of the degree of care required.

7. The objection that certain findings of a special verdict should have been set aside as contrary to the undisputed evidence, and judgment given on the other findings and such evidence, is not available on appeal unless a motion to that effect was first made in the trial court.

APPEAL from a judgment of the circuit court for Pierce county: E. B. BUNDY, Circuit Judge. *Reversed.*

This action was brought for the recovery of damages sustained by the plaintiff while a passenger on its easterly bound train of cars from Ellsworth to Marshfield, Wisconsin, by reason of the alleged negligence of the defendant.

A part of the western bound freight train of the defendant, consisting of a car load of coke, three metal tanks, two of which were filled with naphtha, and one with kerosene oil, and the caboose in the rear, had been separated from the rest of the train, and had been wrecked early in the morning, and the said cars were on fire and in a dangerous condition on the defendant's track between said places, about three miles east of the station called Roberts, and west of Hammond. The defendant carried the plaintiff on its passenger train to Roberts, where the fact that such wreck had occurred was made known to the plaintiff and other passengers. When the passenger train arrived within about 400 feet of the wreck, the passengers were directed to retain their places in the cars until such time as a train might arrive to carry them on their journey, and to which they would be transferred on the east side of the wreck. The forward tank, containing naphtha, exploded soon after the wreck, and everything in the rear of it, as well as the coke car in front, caught fire. This was quite a violent explosion, and portions of the tank were thrown a considerable distance, and the tank containing naphtha next to it was so broken as to permit much of the contents to run out. The kerosene tank in the rear was thus set on fire, and continued to burn from that time until nearly 11 o'clock, a considerable part

of the time with great violence, and producing a loud, roaring noise, with flames shooting up. A wrecking train and car had arrived at about 8 o'clock in the morning, and were operating upon the wreck, and had hitched to the tank of kerosene oil, and attempted to draw it out, scatter the burning coke, and thus clear up the track. Attempts to remove it opened the seams in the tank, and it began to burn more violently.

The wreck occurred in a farming country, and the right of way was 100 feet wide, extending through cultivated fields on either side. A gap was opened in the right of way fence on the south side, 257 feet west of the tank, and another in the wire fence, running through the fields at right angles with the road, at a point ninety-five feet south of the right of way, but 147 feet from the burning tank, and the third gap was opened in the right of way fence 256 feet east of the burning tank, in order to transfer the baggage, express matter, and mails. Efforts were unavailing to keep the passengers in the cars. A large number of them had got out, and thereupon it was concluded to transfer them, through the gaps, around the wreck, to a point east of the east gap, where they were to take the other train, and they were transferred accordingly, as well as the baggage, mail, and express matter; the latter being deposited about opposite the east gap, and the passengers occupied, in groups, a considerable space east from the east gap, along the right of way, for a distance of over 100 feet. The plaintiff, with other passengers, walked around said wreck, through said gaps, to the place where the eastern gap was opened, and said mail matter, baggage, etc., had been deposited, to wait for a train to continue his journey.

The injury complained of occurred about an hour after the passenger train arrived at the scene of the wreck, and when the plaintiff had approached to, and was standing, about eighty-five feet east of the burning tank, or one third

of the distance from said tank to where the east gap had been opened. The plaintiff was standing at said place for about half or three quarters of an hour before the explosion occurred; having left the eastern gap and walked westward towards the burning oil tank. At the time of the explosion the flame from the burning tank ascended about 100 feet or more, and, as one witness said, there was nothing but fire in the sky. Just before the explosion the flames were burning quite high,— from three to five feet,— right in the middle of the tank, and kept rising and going down. The plaintiff received his injuries from the burning oil, cast on him by the explosion.

It was contended by the plaintiff that the defendant was guilty of negligence in not warning him of the danger to which he was exposed by said burning wreck, and in not providing a safe place, and in designating an unsafe one, for the plaintiff and other passengers to wait for the train designated to carry them eastward, and in not warning the plaintiff of the danger to which he was exposed at the place he was waiting, and in allowing him to leave said train and go to said place and there remain, and in allowing said train wreck to be and remain in a dangerous and unsafe condition. The defendant denied all allegations of negligence, and alleged and gave evidence tending to show that, by its officers and agents, it directed the plaintiff and other passengers to a place at the east gap, and eastward thereof, designated as a temporary station, to wait for the train to carry them eastward, which was a sufficient distance from the wreck to insure safety from any injury on account thereof, or the subsequent explosion. The plaintiff, in his complaint, alleged that the defendant directed the plaintiff to go around said wreck to a point east and south thereof, and he accordingly walked around the same to a point on defendant's right of way, designed by the defendant as a temporary station, to wait for said train to carry said passengers eastward.

A special verdict was taken. By this it was found, among other things, in substance, that the plaintiff understood that he was to wait with the other passengers at or near the east gap for the train to carry him on his journey; that, after passing "around through the gaps to a point at or near the east gap, the plaintiff *unnecessarily, and from motives of curiosity and pleasure,* went from there to a place much nearer the burning tank," but not "for the purpose of boarding the outgoing train or supposing that was the proper place to do so," and "that the plaintiff's injuries *were caused* by his so going nearer the burning tank," and that he "would not have been seriously injured *if he had remained at or near the east gap;*" further, that "a reasonable and prudent man, under the circumstances, situate as the plaintiff was and with his means of knowledge, would not have anticipated that there was danger of an explosion of the burning oil tank, or that it might explode, and that there was danger in being so near it when he was injured;" that he "was not guilty of any want of ordinary care that contributed to his injury," but that "the defendant's officers and agents, by the exercise of ordinary care and prudence, would have anticipated that the explosion might occur;" that they "did not exercise reasonable care and prudence in designating a safe place where the plaintiff and other passengers were to take the train east;" that they "were guilty of negligence, which was the proximate cause of the plaintiff's injuries, and did not give the plaintiff any warning whatever with respect to the danger to which he was exposed by virtue of the burning tank;" and, among other things, that "the defendant's officers, in the exercise of reasonable care, ought to have anticipated the plaintiff would leave the east gap, or near there, *and go back nearer to the tank, and thus incur unnecessary danger;* that the defendant, its officers or agents, knew, or, in the exercise of ordinary prudence should have known, of the plaintiff's position in time to warn him *of the danger*

Conroy vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

*which threatened on account of the burning tank."*    The jury found the plaintiff's damages at $2,500.

The defendant moved for judgment on the verdict in its favor, which was denied.   It then moved to set aside the verdict and for a new trial on the grounds, among others, of error in the charge to the jury and in refusing instructions requested by the defendant's counsel, and that the verdict was adverse to, and not sustained by, the evidence; but the motion was denied, and judgment entered thereon against the defendant, from which it appealed.

*L. K. Luse,* attorney, and *Thomas Wilson,* of counsel, for the appellant, argued, among other things, that the relation of carrier and passenger was severed by the plaintiff's voluntary departure from the temporary station. *State v. Grand Trunk R. Co.* 58 Me. 176; *De Kay v. C., M. & St. P. R. Co.* 41 Minn. 178; *Finnegan v. C., St. P., M. & O. R. Co.* 48 id. 378; *Johnson v. B. & M. R. Co.* 125 Mass. 75; *Comm. v. B. & M. R. Co.* 129 id. 500; *Dodge v. Boston & B. S. S. Co.* 148 id. 207; *Toomey v. L., B. & S. C. R. Co.* 3 C. B. (N. S.), 146; *Siner v. G. W. R. Co.* L. R. 3 Exch. 150; *S. C.* L. R. 4 Exch. 117; *Bridges v. North London R. Co.* L. R. 6 Q. B. 377; *Railway Co. v. Cox,* 60 Ark. 106; *Louisville & N. R. Co. v. Ricketts,* 96 Ky. 44; 1 Thomp. Neg. 459, and cases cited; *Mich. Cent. R. Co. v. Coleman,* 28 Mich. 440; *Frost v. Grand Trunk R. Co.* 10 Allen, 387; *McDonald v. C. & N. W. R. Co.* 26 Iowa, 124; *Todd v. O. C. & F. R. R. Co.* 3 Allen, 18; *Railroad Co. v. Jones,* 95 U. S. 439; *Harvey v. E. R. Co.* 116 Mass. 269; *Jewell v. C., St. P. & M. R. Co.* 54 Wis. 610; *Pittsburg & C. R. Co. v. McClurg,* 56 Pa. St. 294; *Torrey v. B. & A. R. Co.* 147 Mass. 412; *Baltimore & Y. Turnpike Road Co. v. Cason,* 72 Md. 377; *Dun v. S. & R. R. Co.* 78 Va. 645; *Bon v. Railway Passenger Asso. Co.* 56 Iowa, 664, 667; *Paterson v. Cent. R. & B. Co.* 85 Ga. 653.

For the respondent there was a brief by *John W. Hancock, Edwin A. Jaggard,* and *Oscar A. Turner,* and oral argument by *Mr. Jaggard.*

Conroy vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

The following opinion was filed March 16, 1897:

PINNEY, J. The carrier owes to its passenger, while that relation exists, the duty of providing reasonably safe stations, whether permanent or temporary, where he may await the arrival of trains, as well as the duty to seasonably warn him, when reasonably necessary, of any existing or apprehended danger which may interfere with or imperil his personal safety. The defendant contends it performed towards the plaintiff the full measure of its duty, and that the proximate, or at least a contributing, cause of the plaintiff's injury was his own negligence in unnecessarily exposing himself to danger. The point to which the plaintiff and his fellow passengers were directed to go by the defendant's agents, and to which he went as a temporary station, as thus directed, to wait for the train which was to convey him and his fellow passengers eastward to their respective destinations, was the gap opened about sixteen rods east of the burning wreck, and at and east of which the mail, express matter, and baggage had been deposited. The wreck and remaining naphtha and the kerosene oil in the oil tank were burning fiercely, and flames were shooting from the joints in the oil tank or car, and flashed up to the height of many feet, making at times a loud, roaring noise. The gaps opened in the right of way fence, on the south side of the railway, by which a way had been opened around the burning wreck, diverged to the south, in order to avoid it. The details of the entire scene, about which there is no material dispute, were open and obvious, even to a casual observer, and gave clear and emphatic warning to the humblest intelligence of impending danger from the burning tank of oil. The situation spoke for itself, and in no uncertain tones. The plaintiff had nothing to do but to observe these facts as they appeared before him, and to consult his own safety. His actual transit as a passenger had been interrupted, and, until the train arrived from the east, he was free to go and

come as he chose, and the company had no power to restrain him in the least.

1. Whether the company had performed its entire duty towards him, under the circumstances, or not, it was his duty to exercise ordinary care and caution to secure his own safety. The railway company was not an insurer of his personal safety, and it is familiar law that, under the circumstances stated, the duties of the plaintiff and of the defendant to observe proper care and caution are reciprocal. If the plaintiff failed to exercise ordinary care and caution, and by reason of such failure he sustained the injuries complained of, he was guilty of contributory negligence, and must be held to have assumed the consequent risk or danger of injury. Assumption of risk in such cases is a species of contributory negligence. *Darcey v. Farmers' L. Co.* 87 Wis. 249; *Nadau v. White River L. Co.* 76 Wis. 120, 131. The plaintiff was in the open country, and under no restraint. Whatever of danger there was in consequence of the alleged negligence of the defendant, he was free and able to avoid it. It is not a question of what he thought or believed would be safe and prudent, under the circumstances, for him to do. If he unnecessarily exposed himself to a danger, obvious to a person of ordinary care and prudence, and was injured in consequence, he cannot recover. He was an adult, and must be held bound to the exercise of the same care and prudence as a person of ordinary care, intelligence, and judgment. The defendant, on the other hand, had a right to assume that the plaintiff would act with reasonable care and caution, and occupy the position or situation to which he had been conducted; and we are unable to perceive anything in the case to warrant the inference that the defendant had any reason to apprehend that the plaintiff would expose himself to or incur unnecessary danger. The actual transit of the plaintiff in the defendant's passenger train having been interrupted, its duty required that it should ex-

ercise towards the plaintiff at the temporary station, as it is called, to which he had been directed, such reasonable and proper care as one of ordinary care and prudence would exercise under the circumstances. The plaintiff appears to have disregarded all the plain and obvious warnings of danger suggested by the facts and circumstances, and which could not have failed, it would seem, to arrest the attention of a person of ordinary intelligence, care, and prudence.

The special verdict finds that, if the plaintiff had remained at the place designated, " he would not have been seriously injured," but that he " unnecessarily, and from motives of curiosity and pleasure, went from there to a place much nearer the burning tank," as already indicated, and where he remained twenty minutes, and up to the time of the explosion from which he received his injuries; that " the plaintiff's injuries were *caused by reason of his so going nearer the burning tank.*" It is true that it is found that the defendant, its officers, etc., " in the exercise of ordinary prudence, should have known of the plaintiff's position in time to warn him of the *danger which threatened* on account of the burning tank," and that in the exercise of reasonable care they ought " to have anticipated that the plaintiff would go nearer to the burning tank, and *thus incur unnecessary danger;* " and they found that the defendant gave the plaintiff warning with respect to the danger to which he was exposed by virtue of the presence of the burning tank, but that " it was insufficiently or negligently given." The jury acquitted the plaintiff " of any want of ordinary care that contributed to his injury," and found that he was " not guilty of any want of ordinary care, however slight, in so going much nearer the burning oil tank," and that " a reasonably prudent man, under the circumstances, situate as the plaintiff was, with his means of knowledge, would not have anticipated that there was danger of an explosion of the burning oil tank." The verdict finds that the defendant's officers,

etc., "by the exercise of ordinary care and prudence, would have anticipated that an explosion might occur," and "did not exercise reasonable care and prudence in designating a safe place where the plaintiff and other passengers were to take the train which was to carry them east;" and that, through its officers, etc., it was "guilty of negligence, which was the proximate cause of the plaintiff's injuries."

The verdict is inconsistent and contradictory on vital points, and no judgment should have been entered on it. It was the duty of the defendant to give proper and sufficient warning of actual or apprehended danger; but the evidence tends to show quite clearly that the plaintiff had ample notice, from the situation and circumstances, of the danger to be apprehended from the burning wreck and tank of kerosene. A considerable number of witnesses on the part of the defendant gave evidence tending to show that its agents and servants gave reasonable warning of danger, and indicated where the passengers were to remain; but the plaintiff denied that he heard anything of the kind, and so did two others who testified in his behalf. Aside from this, there was little or no material dispute as to the facts. The question is as to the proper inferences to be drawn from them. The highly inflammable and dangerous character of kerosene is a matter of common knowledge. Its irregular and rapid combustion from a lamp in an ordinary room justly conveys alarm and an immediate sense of danger. Here was an entire tank or car of it, upon a burning wreck, and in a highly heated condition, and flames escaping from joints in the tank. It was liable at any time to explode with great violence and serious injury. It would seem that no notice that could be given would convey more clearly a sense of impending danger than the actual situation, open and obvious to any one who would make a reasonable use of his senses.

2. The plaintiff cannot recover for injuries caused by the defendant's negligence if he himself failed to exercise proper

care and his own negligence contributed to the result. In *Hickey v. B. & L. R. Co.* 14 Allen, 429, the rule we think applicable to the case is stated: That if an injury has happened while a party is occupying a place provided for the accommodation of passengers, nothing further is ordinarily necessary to show due care on his part; but when the evidence shows that he left the place assigned for passengers, and was occupying an exposed position, and "that the injury was due in part to the fact of such position, he must necessarily fail, unless he can also make it appear that by some ground of necessity or propriety his being in that position was consistent with the exercise of proper care or caution on his part." All the adjudged cases agree that a person who seeks to recover for a personal injury sustained by another's negligence must not himself be guilty of negligence which substantially contributes to the result. *Railroad Co. v. Houston,* 95 U. S. 697–702; *Indermaur v. Dames,* L. R. 1 C. P. 274, L. R. 2 C. P. 313; *Reynolds v. N. Y. C. & H. R. R. Co.* 58 N. Y. 248, 252. A passenger is not justified in incurring risks unnecessarily, however rare the chances may be that he will suffer by it (*Todd v. O. C. & F. R. R. Co.* 3 Allen, 18); and, "if passengers voluntarily take exposed positions, with no occasion therefor caused by the managers of the road, except a bare license by noninterference or passive permission of the conductor, they take the special risks of that position on themselves" (*Sweeny v. O. C. & N. R. Co.* 10 Allen, 368; *Penn. R. Co. v. Zebe,* 33 Pa. St. 318–327; *Coleman v. Second Ave. R. Co.* 114 N. Y. 609, 612, 613). The plaintiff in this case voluntarily, and out of mere curiosity and for his own pleasure, took an exposed position, not intended or pointed out for passengers, and he cannot hold the defendant liable for injuries to which such act contributed. *Torrey v. B. & A. R. Co.* 147 Mass. 412, 413. The defendant and its agents were not bound, under the circumstances of this case, to restrain the plaintiff by physical force

in order to keep him out of manifest danger, which was as.
obvious to him as to them. It was not negligence on their
part that they did not restrain him by physical force from
unnecessarily exposing himself to danger from the burning
tank of oil. *Penn. R. Co. v. Zebe*, 33 Pa. St. 327; *Hickey v.
B. & L. R. Co.* 14 Allen, 433.

3. The relation of carrier and passenger we think existed
between the plaintiff and defendant at the time of his injury,
although his actual transit as such had been interrupted for
the time being, and he had been directed, and had proceeded,.
to a place on the defendant's premises, to await the arrival
of another train upon which to complete his journey. He
had not abandoned his right to complete it in the defend-
ant's cars. He had merely taken up, it is claimed, an ex-
posed and dangerous position with reference to the burning
tank of oil on the defendant's right of way, which may, per-
haps, disentitle him to recover on account of the injuries he
received.

4. The defendant did nothing, either expressly or by
implication, to invite, entice, or allure the plaintiff to the
position of danger he appears to have voluntarily and unnec-
essarily assumed. Neither the impending danger, nor its
cause, was concealed. He was not a child of immature years,.
but an adult, and, as we must assume, of reasonable intelli-
gence, judgment, and prudence. With a full knowledge of
the facts, or the means of knowledge before him, he took
this position of danger, and kept it for twenty minutes be-
fore the explosion, watching the tank and its surroundings,
to gratify his curiosity. The case does not come within the
rule of *Bennett v. Railroad Co.* 102 U. S. 577, and cases
there cited. Here there was no pitfall or trap, nor had there
been any invitation to the plaintiff, express or implied, to
occupy the position he did. He was still under obligation
to use reasonable care on his part for his own safety. Nor
is the case, for the reason stated, governed by the principles

upon which the cases of *Railroad Co. v. Stout,* 17 Wall. 657; *Keffe v. M. & St. P. R. Co.* 21 Minn. 207–211; and *Union P. R. Co. v. McDonald,* 152 U. S. 262, much relied on by the plaintiff, were decided.

5. In respect to the alleged negligence of the defendant, the court erroneously charged the jury "that it was the duty of the carrier to exercise extraordinary vigilance, aided by the highest skill, and to exercise the highest degree of care, to prevent the interposition of any obstacle to expose the plaintiff to danger while waiting for the train to arrive;" although the court correctly said, elsewhere in the charge, that the duty the defendant owed to the plaintiff, to protect him from injury from the burning oil tank, was "only that of ordinary care and prudence, and no greater, under like circumstances, than the obligation the plaintiff was under to protect him from such danger and consequent injury." The charge upon this material point was contradictory and misleading, and constitutes reversible error. A railroad company is held to the highest degree of care in respect to the condition and management of its engines and cars, for negligence in that respect involves extreme peril to passengers, against which they cannot protect themselves. *Moreland v. B. & P. R. Corp.* 141 Mass. 31; *Morris v. N. Y. C. & H. R. R. Co.* 106 N. Y. 678; *Kelly v. Manhattan R. Co.* 112 N. Y. 443; *Palmer v. Pennsylvania Co.* 111 N. Y. 488. The plaintiff was under no restraint, and was free to adopt such precautions as might seem necessary to protect himself from injury, and the defendant was bound to the exercise of only ordinary care and prudence, in view of the situation and existing circumstances.

6. The questions of negligence on the part of the plaintiff, as well as of the defendant, were in this case, we think, for the jury in the first instance, under proper instructions from the court. What may be negligence under some circumstances and conditions may not be under others. It is to be

inferred from the facts and circumstances given in evidence, and is for the jury, where the conclusion is debatable or rests in doubt. *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 497. If the jury arrive at conclusions wholly unwarranted, the court, in the exercise of sound discretion, may set aside the verdict and grant a new trial. *Valin v. M. & N. R. Co.* 82 Wis. 5, 6, and cases cited. Judgment could not be given for either party on the verdict by reason of its being inconsistent and contradictory, or upon the uncontradicted evidence, until the verdict, or the conflicting portions of it, were set aside. The defendant could not have judgment *non obstante veredicto. Sheehy v. Duffy*, 89 Wis. 13. The defendant, in order to render its main contentions available in this court, should have moved the trial court to set aside the parts of the special verdict not sustained by the evidence, and for judgment on the remainder and on the uncontradicted evidence. This practice was held proper in *Menominee River S. & D. Co. v. M. & N. R. Co.* 91 Wis. 447, 457, 458. In *Schweickhart v. Stuewe*, 75 Wis. 160, where the previous cases were cited, it was said that the "utmost extent to which this court has gone in authorizing the trial court to disregard the special verdict rendered by a jury, where such verdict is wholly unsupported by the evidence, is to set aside such verdict, and then, in its discretion, and not as an absolute duty, to enter judgment in accordance with the undisputed evidence in the case, or to set aside the verdict entirely and grant a new trial." *J. & H. Clasgens Co. v. Silber*, 87 Wis. 357; *Murphey v. Weil*, 89 Wis. 150, 151. It is only where there is no evidence to support a material finding that it can be set aside or stricken from the record, but, where it is against the decided preponderance of the evidence, upon setting it aside, there should be a new trial. *Sheehy v. Duffy, supra; Ohlweiler v. Lohmann*, 82 Wis. 198; *Dahl v. Milwaukee City R. Co.* 65 Wis. 371; *Annas v. M. & N. R. Co.* 67 Wis. 60. This court has no original power to correct or

to set aside any part of a special verdict.    Its jurisdiction of such matters is appellate only.    All applications for that purpose must be made to the trial court.

For the reasons stated, there must be a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

A motion for a rehearing was denied May 21, 1897.

For a note on the rights and liabilities of the parties when a passenger temporarily leaves the vehicle before completion of his journey, see *Finnegan v. C., St. P., M. & O. R. Co.* (48 Minn. 378) in 15 L. R. A. 399.— Rep.