REINDL and another, Respondents, vs. HEATH and another,
Appellants.

*September 3 — September 23, 1902.*

*Contracts: Logs and timber: Condition precedent or independent
stipulation?*

> Defendants contracted to deliver a certain quantity of logs to be
> sawed by plaintiffs at their mill at a certain price per M., and
> plaintiffs agreed not to saw logs for others without defendants'
> consent. *Held,* that a violation of the latter agreement by
> plaintiffs, which did not interfere with the sawing of all logs
> delivered by defendants, was merely the breach of an inde-
> pendent stipulation and did not excuse defendants from deliver-
> ing all the logs called for by the contract.

APPEAL from a judgment of the circuit court for Langlade
county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This is an action for damages for the alleged breach of a
logging contract in writing entered into October 11, 1899, by
and between the plaintiffs, who were partners and the owners
of a sawmill at Deerbrook, Langlade county, Wisconsin, and
the defendants, who were doing business under the firm name
mentioned at Chicago, whereby the plaintiffs agreed to manu-
facture into lumber, pile and deliver on the cars at their saw-
mill, all the saw logs that might be purchased and delivered at
their mill by the·defendants or their agents during the winter
of 1899--1900, which should not be less than 4,000,000 feet,
at $3.50 per 1,000 feet, log scale, for all birch, elm, maple,
oak, ash, and cherry, and $3 per 1,000 feet for all hemlock,
basswood, and pine; that, if the defendants failed to deliver
the 4,000,000 feet, then they should pay to the plaintiffs for
that amount at the prices named; that the price for sawing
and piling ties should be six cents each; and provided that
all lumber was to be sawed into thicknesses, etc., as the de-
fendants might require from time to time, and to be evenly
manufactured in a good and workmanlike manner, trimmed

to uniform lengths, and properly cross-piled, as fast as sawed, on good foundations, as directed, and all piles covered with cull lumber as fast as completed, and loaded on cars when required by the defendants,—all to be shipped prior to January 1, 1901. And it was therein further agreed and understood that the plaintiffs should "not purchase any hardwood logs for themselves or for any individual, firm, or corporation, except as directed by the" defendants "or their agents; nor saw hardwood logs or manufacture hardwood lumber for any firm, individual, or corporation without the consent of the" defendants; and "that all saw logs put in during the time above mentioned from the lands of the" defendants, known as the "McHale Lands," should "be delivered to the sawmill yard of the" plaintiffs; that the plaintiffs should "commence sawing as soon as a sufficient amount of logs" should be "delivered on their mill yard to keep the mill running, and continue thereafter, as far as practicable, until all logs" should be sawed as above specified. It was therein further agreed that an option was thereby given to the defendants by the plaintiffs for the continuation of such contract for the winters of 1900 and 1901, but that such option should be accepted by the defendants in writing before July 1, 1900; that the plaintiffs should have all the slabs necessary for fuel, and the balance should be piled and loaded by the plaintiffs, and, if shipped by the defendants before October 1, 1900, the sum of fifty cents per cord should be paid to the plaintiffs when loaded on the cars,—all slabs to be four feet long, and all slabs remaining on the yard after October 1, 1900, should become the property of the plaintiffs. The defendants therein agreed to pay on the 15th of each month, at prices thereinbefore mentioned, for all lumber sawed the previous month, less the sum of fifty cents per 1,000 feet, which amount should become due and be paid on the 15th day of each month for all lumber loaded on the cars the previous month; and it was therein understood and agreed that, should the sawmill of the plaint-

iffs burn down or be otherwise destroyed, the mill was to be rebuilt, or arrangements made at their expense for sawing and manufacturing the lumber as thereinbefore mentioned at some other point, according to the contract.

The complaint, as amended, alleged two causes of action. The first is to recover $1,204.89, due for the manufacture of lumber which had been actually delivered according to the terms of the contract; which cause of action was practically abandoned on the trial, and dismissed in the judgment. The second cause of action is to recover damages for failure to deliver 1,963,004 feet of the logs so agreed to be delivered. The defendants answered by way of admissions, denials, and counter allegations to the effect that the lumber was not manufactured by the plaintiffs in a good, workmanlike manner, and that it was not of the proper thickness according to the terms of the contract; that according to the terms of the contract the plaintiffs were not to saw any hardwood logs for any firm or corporation without the consent of the defendants, and the defendants were to have the exclusive use of the plaintiffs' mill for sawing timber; that the plaintiffs did saw hardwood logs for other persons, without the consent of the defendants, and did also compete with the defendants in the purchase of saw logs to be sawed,—all of which was in violation of the terms of the contract; and claimed damages by way of counterclaim for such failure to manufacture the lumber in a good and workmanlike manner, as agreed in the contract. The answer admitted the failure of the defendants to deliver the 1,963,004 feet, as alleged, and justified the same on the ground of such breaches of contract on the part of the plaintiffs. The plaintiffs took issue with the counterclaim by way of reply.

At the close of the trial the jury returned a special verdict to the effect: (1) That the logs delivered by the defendants to the plaintiffs were sawed by the plaintiffs in a good and workmanlike manner, (2) in accordance with the directions given

to them by the defendants; (3) that the lumber sawed by the plaintiffs for the defendants under the contract was properly piled by the plaintiffs; (4) that such lumber was piled by the plaintiffs in accordance with directions given to them by the defendants; (5) that during the season of 1899–1900 the plaintiffs did saw at their mill hardwood logs for other persons than the defendants, (6) but that the defendants gave their consent to such sawing for such other persons; (7) that during the season of 1899–1900 the plaintiffs did not buy hardwood logs for themselves or other persons than the defendants; (9) that the cost of sawing, piling, and loading hardwood lumber at the mill of the plaintiffs during the season of 1900 was $2 per 1,000; (10) that seventy-five per cent. of the logs which the defendants so failed to deliver to the plaintiffs would have been of the kinds for which the plaintiffs were entitled to receive $3 per 1,000 feet for sawing, piling, and loading; and (11) twenty-five per cent. thereof was of the kinds for which the plaintiffs were entitled to receive $3.50 per 1,000 feet for sawing, piling, and loading.

Upon such special verdict judgment was ordered by the court and entered in favor of the plaintiffs for $2,412.27 damages and $184.71 costs. From the judgment so entered the defendants appeal.

For the appellants there was a brief by *Quarles, Spence & Quarles,* and oral argument by *George Lines.*

For the respondents there was a brief by *Bouck & Hilton,* and oral argument by *Gabe Bouck.*

CASSODAY, C. J. It is undisputed that in May, 1900, the defendants declined and refused to deliver any more logs at the mill of the plaintiffs under their contract. At that time they had only delivered a little more than one half called for by the contract. The defendants justify such refusal on the ground that the plaintiffs had broken their contract in the several particulars alleged in the answer. The jury, by their

special verdict, found against the defendants on all of such issues. But it is contended that some of such findings are contrary to the undisputed evidence. Thus it is claimed that the sixth finding, to the effect that the defendants gave their consent to the sawing of hardwood logs for others than the defendants, is unsupported by the evidence. This contention seems to be well founded, at least to some extent, conceding that the witness A. M. Millard acted as the agent of the defendants, and had authority to represent them, and did represent them through all the business of carrying out the contract. So, if hardwood logs included elm railroad ties, then there can be no question but that the seventh finding of the jury is contrary to the undisputed evidence. The contract expressly covered "all the saw logs" that might be purchased and delivered, and stipulated for the price "for sawing and piling ties." It is undisputed that the plaintiffs purchased of others timber from which was sawed 35,000 elm railroad ties. Such purchase of timber seems to have been a breach of the contract. If the defendants sustained any damage for such breaches of contract, they should have insisted upon their counterclaim, instead of withdrawing the same at the close of the testimony. The question recurs whether the defendants were justified in declining and refusing to deliver the balance of the logs contracted for by reason of such breaches of the contract. That depends upon whether the agreement on the part of the defendants to deliver the logs was dependent upon the plaintiffs refraining from sawing or buying hardwood logs from others without the consent of the defendants. The rule laid down by Lord MANSFIELD, C. J., and often quoted approvingly, is "that the dependence or independence of covenants was to be collected from the evident sense and meaning of the parties, and that, however transposed they might be in the deed, their precedency must depend on the order of time in which the intent of the transaction requires their performance." *Jones v. Barkley,* 2 Doug. 691. To the

same effect, *Bettini v. Gye,* L. R. 1 Q. B. Div. 187; *Tipton v. Feitner,* 20 N. Y. 425; *Cadwell v. Blake,* 6 Gray, 407; *Hoffman v. King,* 70 Wis. 379, 36 N. W. 25. As stated by Chief Justice SHAW, and repeatedly sanctioned by this court:

"It seems to be well settled that, when there is a stipulation amounting to a condition precedent, the failure of one party to perform such condition will excuse the other party from all further performance of stipulations depending upon such prior performance. But a failure to perform an independent stipulation, not amounting to a condition precedent, though it subject the party failing to damages, does not excuse the party on the other side from the performance of all stipulations on his part." "When the act of one is not necessary to the act of the other, though it would be convenient, useful, or beneficial, yet, as the want of it does not prevent performance, and the loss and inconvenience can be compensated in damages, the performance of the one is not a condition to the obligation to perform by the other." *Mill Dam Foundry v. Hovey,* 21 Pick. 437, 439; *Hoffman v. King,* 70 Wis. 382, 383, 36 N. W. 30; *Sheehy v. Duffy,* 89 Wis. 16, 61 N. W. 298.

The contract did not require the plaintiffs "to commence sawing" until "a sufficient amount of logs" should be "delivered on their mill yard to keep the mill running, and continue thereafter, as far as practicable, until all logs" should be "sawed as above specified." There is no claim that the plaintiffs sawed logs for others to such an extent as to prevent or interfere with the sawing of all logs delivered by the defendants. It does not follow that the plaintiffs could not or did not saw all logs as fast as delivered by the defendants merely because the plaintiffs sawed 24,000 feet for Miller and 50,000 for the railroad company. Such buying and sawing logs by the plaintiffs were simply breaches of independent stipulations in the contract. We must hold that the defendants were not justified nor excused from delivering all the logs called for by the contract. This view of the case makes it unnecessary to consider other errors assigned.

*By the Court.*—The judgment of the circuit court is affirmed.