MUENCH, Respondent, vs. HEINEMANN and others, Appellants.

*October 2—October 20, 1903.*

*Evidence: Admissions by one partner: Disabling injury: Damages: Earning capacity: Profits of business: Injury to mere licensee: Defective elevator: Judgment notwithstanding verdict: Appeal.*

1. In an action against partners for personal injuries caused by the falling of a pulley in an elevator in their building, evidence of statements made by one of the defendants, in the nature of admissions as to the way in which the accident was caused and the manner in which the pulley was attached to the ceiling, was admissible as against all the defendants.

2. In an action for injuries which disabled plaintiff from attending to his regular business, it was not error to permit him to state what were the customary profits of the business, as against an objection that the books were the best evidence, especially where the charge to the jury was correct and did not allow the loss of profits as an element of damage; although, had proper objection been made, the court should, perhaps, have required that proof be first made of the size and character of the business and the quality and amount of the plaintiff's services therein—all of such facts being admissible merely as tending to show plaintiff's earning capacity.

3. Where plaintiff went upon defendants' premises to transact his own private business with defendants' employees, in which defendants themselves had no interest, he was a mere licensee, even though one of the defendants had directed or permitted him to use a certain elevator; and, if there was no active negligence on defendants' part, he cannot recover for injuries sustained while using such elevator.

4. Where defendant moved in the trial court for judgment not-
   withstanding the verdict and it appears, on appeal, that the
   motion should have been granted, this court, on reversing the
   judgment for plaintiff, will direct the entry of judgment for
   the defendant. *Sheehy v. Duffy*, 89 Wis. 6, holding that the
   defendant cannot move for judgment notwithstanding the ver-
   dict, overruled.

APPEAL from a judgment of the circuit court for Milwau-
kee county; WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries.
In August, 1900, and for some time prior thereto, the de-
fendants, as partners, were manufacturers of hats in the city
of Milwaukee, and at the time of the accident occupied a
four-story building, and had occupied the same for about two
weeks. In this building there are two freight elevators, which
were moved by hydraulic power, and in each of them the
shifting cable passed over a sheave or pulley at the top of the
shaft, which sheave or pulley was attached to a hanger, which
hanger was attached by screws to planks forming the ceiling
of the shaft. The plaintiff was in the grocery business in
Milwaukee, and also peddled milk from 5 a. m. to noon each
day, and had for some time sold milk to the defendants' em-
ployees, and continued that practice after the defendants
moved into the building aforesaid. He was accustomed to
take his milk cans into the east freight elevator aforesaid, and
go up to the fourth floor in the elevator, operating the shift-
ing cable himself, and come down in the same way after de-
livering his milk. The milk was for the employees' conven-
ience and use, solely, but the forewoman upon the fourth floor
was accustomed to collect the money from the employees and
hand it to the plaintiff, thus saving time. Plaintiff testifies
that on August 3, 1900, he entered the building as usual to
deliver milk, and that he met *Mr. Jenner,* one of the defend-
ants' firm, who saw him using the east elevator, and directed
him in the future to take the west one, as that was the pas-
senger elevator. This statement is absolutely denied by *Jen-*

*ner.* On the morning of August 4, 1900, plaintiff entered the building with his milk cans as usual, took the west elevator to the fourth floor, delivered his milk, and then took the elevator down again; and, when he was part way down, the sheave, over which the shifting cable ran, fell, striking him and badly injuring him. The jury returned the following special verdict:

"(1) Was the plaintiff injured on the 4th of August, 1900, in defendants' place of business, while riding upon an elevator therein, by being struck by an iron wheel, called a 'shifting pulley,' which fell from the top of such elevator shaft? *Answer.* Yes.

"(2) Prior to August 4, 1900, had the plaintiff been expressly directed by the defendants, or one of them, to use the elevator which he was using when injured, and not to use the other elevator, when he desired to visit the various floors in defendants' building? *A.* Yes.

"(3) Was the pulley or wheel at the top of the elevator shaft, over which the shifting cable passed, fastened in an insecure and unsafe manner, so as to be likely to be pulled or to fall from its position by reason of the operation of such elevator in a proper manner, and with ordinary care and skill? *A.* Yes.

"(4) When the elevator and its machinery were turned over to the defendants, was there any obvious and patent defect in the manner in which such shifting pulley was fastened to the timbers at the top of the building, above the elevator shaft? *A.* Yes.

"(5) If you answer the fourth question 'Yes,' then had such manner of fastening existed for such a length of time that the defendants, in the exercise of reasonable diligence, knew, or ought to have known, of its existence? *A.* Yes.

"(6) If you answer question 4 'Yes,' was such manner of fastening the proximate cause of the plaintiff's injury? *A.* Yes.

"(7) Was plaintiff guilty of any want of ordinary care which contributed to produce the injury received? *A.* No.

"(8) What sum of money will compensate plaintiff for his injury? *A.* Five hundred dollars."

Plaintiff moved for judgment upon the verdict. The defendants also moved for judgment, and, if that motion should be denied, for an order changing the answers to the second, third, fourth, and fifth questions from the affirmative to the negative, and for judgment upon the verdict when so amended; and, if both motions should be denied, the defendants then moved for a new trial. All the motions of the defendants were overruled, exception taken, and judgment rendered for the plaintiff upon the verdict, from which the defendants appeal.

For the appellants there was a brief by *Joseph B. Doe,* attorney, and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *Joseph B. Doe.*

For the respondent there was a brief by *Doerfler, McElroy & Eschweiler,* and oral argument by *F. C. Eschweiler.* To the point that plaintiff's daily visits in bringing necessaries to the defendants' employees, to the knowledge of the defendants, and the express direction to use this particular elevator, had made him more than a mere licensee on the premises, they cited *Ill. Cent. R. Co. v. Hopkins,* 200 Ill. 122, 65 N. E. 656; *Hupfer v. National D. Co.* 114 Wis. 279–285; *Barowski v. Schulz,* 112 Wis. 415; *Anderson v. Hayes,* 101 Wis. 538; *Toomey v. Sanborn,* 146 Mass. 28; *Gordon v. Cummings,* 152 Mass. 513; *Gorr v. Mittlestaedt,* 96 Wis. 296, 298.

WINSLOW, J. There were two exceptions taken to rulings upon evidence, which will be noticed before proceeding to the main question in the case:

. Both the plaintiff and his brother testified to having had conversations with one of the defendants (*Mr. Jenner*) after the accident, and that *Mr. Jenner* stated that plaintiff was struck by the falling pulley or wheel; that it was put up carelessly, and that it was just put up on a two-inch piece of pine wood with a screw, and the screw worked through; that

it was negligent on the part of the elevator people to put it up in that way; and that it ought to have been bolted. Due objection and exception were taken to the reception of this evidence, but we are unable to see wherein there was any error. *Jenner* was one of the defendants, and a copartner with the other defendants. His statements, which were in the nature of admissions as to the way in which the accident was caused, and the manner in which the pulley was attached to the ceiling, were certainly competent, not only as against himself, but as against his copartners.

It appeared that the plaintiff had a small grocery business, which he managed afternoons, and that he peddled milk in the morning, and that he was prevented by the accident from attending to either business for about eight weeks. He was then asked the question: "What were your customary and usual profits from your business—both the milk and grocery business—for the six months prior to the accident?" To this objection was made by defendants as incompetent, with a request to be allowed to ask the witness a question to show its incompetency, which being granted, the witness was asked if he kept books in his business, and replied in the affirmative. Upon this, the objection was renewed and overruled, and the witness answered, "About $20 per week." The witness further stated that he was obliged to employ a man for eight weeks, at an expense of $10 per week, while he was laid up. No further evidence was given as to the size or character of the plaintiff's business. In charging the jury as to the eighth question of the special verdict, the trial judge said, in substance, that compensation would consist of a reasonable physician's bill, the reasonable expense of hiring an extra man, made necessary by his injury, and such sum as would reasonably compensate plaintiff for his pain and suffering resulting from the injury, and that the jury should answer the question by taking into consideration these elements. It is claimed that it was error to admit the testimony as to the

profits of the plaintiff's business. This subject has been so recently reviewed by this court in the case of *Heer v. Warren-Scharf A. P. Co.* 118 Wis. 57, 94 N. W. 789, that any extended discussion now seems out of place. In that case it was, in substance, held that where a man not working on a salary, but managing an established business, which is mainly dependent on his personal exertions, has been disabled, and sues to recover damages for the injury, it is competent to show the character and magnitude of the business, and to that end to show the capital and assistance employed in the business, also the quality and amount of the plaintiff's services in the business before the accident, and the amount of the profits of the business, not for the reason that such profits are in any respect elements of damage, nor that their loss or impairment can be proven because they represent interest on the capital employed, the value of the good will, and perhaps other elements, in addition to the value of the personal services of the plaintiff, but for the reason that all these elements, when known, are truly descriptive of the quality of the service of which the plaintiff was capable before his injury, and thus tend to throw light on his earning capacity. Of course, all of the elements above named are essential, and, in the orderly trial of a case, the proof of the amount of profits should not be made until the other necessary elements are shown. This, however, is simply a question of the order of the proof, which is largely in the discretion of the court, and it is manifest that all the elements cannot be proven in one breath; nor was any objection made upon this ground, but simply upon the ground, apparently, that the books were the best proof of the fact. Had objection been made on the ground that the preliminary facts had not been shown, or had motion been made to strike out on that ground, it may well be that the objection should have been sustained or the proof stricken out; but in the absence of such objection or motion we cannot say there was affirmative error in the ruling, es-

pecially in view of the fact that the charge of the court was entirely correct, and did not allow the consideration or recovery of loss of profits as an element of damage.

The main question in the case, however, is whether, under the facts testified to by the plaintiff himself and found by the jury, there is any liability shown; and this depends upon the question whether, under those facts, the plaintiff was a mere licensee, or one who was upon the premises by invitation, express or implied. If he was a mere licensee, there can be no recovery, because a mere licensee takes the premises as he finds them, and the licensor owes him no duty, save to refrain from acts of active negligence rendering the premises dangerous. *Cahill v. Layton,* 57 Wis. 600, 16 N. W. 1. If, on the other hand, he was more than a mere licensee, and was on the premises by invitation, express or implied, the defendants owed him the duty of exercising ordinary care to keep the premises in safe condition for use by persons themselves exercising ordinary care. *Gorr v. Mittlestaedt,* 96 Wis. 296, 71 N. W. 656.

Mere permission or license does not imply invitation. When that fact alone appears, the permitted person is a mere licensee; but when it is shown that the permitted person enters on the premises in the ordinary way to transact business with the licensor, or that the object of his visit is one in which there is mutuality of interest between licensor and licensee, then the permitted person ceases to be a mere licensee, and becomes not only a licensee, but an invited person, to whom the duty of exercising ordinary care is owing. *Hupfer v. National D. Co.* 114 Wis. 279, 90 N. W. 191. In the present case it appears without dispute that the plaintiff went upon the premises for the transaction of private business of his own with the defendants' employees, in which the defendants themselves had no interest, and up to the time, at least, when the defendant *Jenner,* as alleged and found, directed him to use the west elevator, he was a mere licensee; and the

simple question presented is whether that direction constituted an invitation, either express or implied. We have been unable to see how it can be so construed. True, it was a permission, but a mere licensee has permission. It substituted affirmative consent for mere sufferance, but simple consent is not invitation, express or implied. It was as if *Jenner* had said, "You are at liberty to use this elevator in transacting your own business with my employees." How can this be construed as invitation, express or implied? There was still no mutuality of interest in the object of the plaintiff's visits, nor any express or implied request to continue them, but only affirmative permission in place of tacit sufferance.

We are referred to the case of *Illinois Cent. R. Co. v. Hopkins,* 200 Ill. 122, 65 N. E. 656, as sustaining the idea that there was implied invitation in the present case. That case certainly carries the rule very far, and furnishes some ground for the contention made here; but the decision was placed upon the ground that mutuality of interest was shown, and hence that there was implied invitation, and we are unable to find any such element in the present case.

The result is that, in any aspect of the evidence, the plaintiff was a mere licensee upon the premises; and, no active negligence being shown, he cannot recover. We have found no other exceptions in the record which require discussion.

The question as to whether the case should be sent back for a new trial, or for the entry of a judgment in favor of the defendants, is not entirely clear. The ordinary rule in jury cases is that upon reversal for error they will be remitted to the trial court for a new trial; but where a special verdict has been rendered, and the appellant has moved in the trial court to change the answers to certain questions, and for judgment on the verdict when so changed, this court will, on reversal, send the case back with directions to enter judgment according to the motion, if it be held that the motion should have been granted. *Conroy v. C., St. P., M. & O. R. Co.* 96 Wis.

243, 70 N. W. 486; *Keller v. Schmidt,* 104 Wis. 596, 80 N. W. 935. In the present case there were motions to change the answers to questions 2 to 5, inclusive, and for judgment on the verdict when so amended; but the difficulty is that there was evidence in support of all these answers, and hence the motions were properly overruled. The defendants, before making these motions, however, had moved for judgment notwithstanding the verdict; but here we are met with the proposition broadly stated in *Sheehy v. Duffy,* 89 Wis. 6, 61 N. W. 295, and reiterated in the *Conroy Case,* that the defendant cannot move for judgment notwithstanding the verdict. This was a technical rule of the ancient practice, the reason for which is found in finespun distinctions, more fanciful than convincing. It seems to sacrifice the substance of things to mere form. The substance of the requirement is that the appellant should move for judgment after the verdict is in, so that the trial court may have an opportunity to pass on the question. To say that when he moves for judgment *on* the verdict this court will, on reversal, direct the judgment, but will refuse it when he moves for judgment *notwithstanding* the verdict, savors extremely of legal hairsplitting. In either case the trial court is moved to grant the very judgment which we now say should have been granted, and we have concluded to overrule the case of *Sheehy v. Duffy* upon this point.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the defendants.