Brinilson, Administrator, Respondent, vs. Chicago &
Northwestern Railway Company, Appellant.

*January 10—January 31, 1911.*

*Negligence: Dangerous premises: Railroads: Steam pit in breakwater
used as walk: Duty to licensees: Want of repair: Notice: Death
of child: Contributory negligence.*

1. Where a railway company whose track ran along the shore of
   Lake Michigan had constructed outside of such track a break-
   water covered on top with planking which formed a firm and
   even walk or pathway, access to which from the street was un-
   obstructed, and to the knowledge of the company's agents and
   servants such planked surface was used by the public as a path-
   way or walk and by boys as a place for boating, fishing, and
   swimming, the persons making such customary use of the prem-
   ises were licensees, having implied permission so to use them,
   and not trespassers.
2. Under such circumstances a licensee must be deemed to take the
   premises as he finds them, and the licensor owes him no duty
   except to refrain from acts of active negligence rendering the
   premises dangerous.
3. Where in such breakwater the railway company had constructed
   a steam and hot-water pit, five feet in diameter at the top and
   six or seven feet deep, covered like the rest of the breakwater
   with planking, and had suffered a large hole in the covering,
   caused by the removal of one of the planks, to remain a long
   time unrepaired, and such hole was not readily observable, be-
   ing obscured by the steam rising through it and through the
   cracks between the other planks, the company was guilty of
   active and actionable negligence rendering it liable for the death
   of a boy five and one-half years old who, while walking with an
   older brother along the plank covering of the breakwater, fell
   through the hole into the steam pit.
4. Evidence that persons had observed such hole at various times,
   from three months before the accident down to the day thereof,
   warranted the jury in finding that the railway company was
   negligent in failing to discover the hole and repair it.
5. In view of the tender age of the deceased and of the surrounding
   conditions, it cannot be held as matter of law that he was guilty
   of contributory negligence in not observing and avoiding the
   hole.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

The plaintiff's intestate, a boy of the age of five and one-half years, on February 22, 1906, fell into a steam and hot-water pit constructed by the defendant in a breakwater which it maintained to protect its property along the shore of Lake Michigan in the city of Milwaukee. The boy was so badly scalded by the steam and hot water discharged into this pit from the roundhouse of the defendant near by that he died on March 5, 1906. The pit into which the boy fell was in the center of a crib in the breakwater, was about three feet in diameter at the bottom, possibly five feet in diameter at the top, and six or seven feet deep. In the previous October the defendant had removed the stone from the crib so as to form the pit above described and had laid an underground conduit from its roundhouse to the center of the pit. The pit was covered by planks which were a part of the planking covering the breakwater. The child fell into the pit through an opening about a foot wide and from six to seven feet long made by the removal of part of a plank of that size in the breakwater covering. The boy and an older brother were walking over part of the breakwater and into the railroad yards, where they looked for tin plates and some colored glass thrown from the dining cars of the defendant.

The complaint alleges that the breakwater was made a pleasant promenade by being covered with planking, that no obstructions were so placed as to prevent its use by the public, and that people were not excluded from walking upon it. It is alleged that the death of the boy was due to the negligence of the defendant in permitting a dangerous hole to exist in the covering of the pit in the manner stated, and damages are asked for the death of the boy thus caused and for the pain and suffering endured by him in consequence of his injuries during his lifetime.

The evidence tends to show that the defendant's agents and

servants knew that the public were using the breakwater and the adjacent grounds for walking, fishing, and swimming, but that notices of "No thoroughfare" were posted to warn people off of the tracks, and that people, boys particularly, were expelled from the tracks.

The breakwater extends north from Polk street. The evidence as to whether or not a fence extending east from a building belonging to the defendant along the north line of Polk street extended over the breakwater at the time of the accident is in conflict.

There was evidence that the hole in the planking on the breakwater had existed for some weeks before and up to the time of the accident and that it was a dangerous trap to persons walking on the breakwater. Various witnesses testified that they had seen the hole in the covering of the breakwater two or three months before the accident, a month or two before the accident, two weeks before it, and also on the day before the accident. There was evidence tending to show that this opening was difficult to see because of the steam arising from the hole and from the cracks between the other planks, and because of the conditions surrounding it.

The jury found that the defendant was negligent and that it caused the injury, and awarded damages. This is an appeal from the judgment on the verdict in plaintiff's favor.

*William G. Wheeler,* for the appellant.

For the respondent there was a brief by *Norman L. Baker* and *W. J. Zimmers,* and oral argument by *Mr. Baker.*

SIEBECKER, J. The appellant avers that the place where the boy was injured is its property. This the respondent denies, and asserts that the place of injury is located on the bed of Lake Michigan, and hence not within the boundaries of the appellant's private grounds. In the view we take of the case this question need not necessarily be considered in determining the issues raised and we therefore do not decide this controversy between the parties.

It is undisputed that the appellant maintained a breakwater at the place designated to protect its grounds from the action of the waters of the lake; that it had filled with earth the area between the breakwater and the dry land; and that it used and occupied this area for railroad purposes. As appears in the above statement of facts, the appellant had covered the surface of the breakwater with planking which formed a firm and even walk or pathway along and above the waters of the lake, which was used by the public as a footpath to pass and repass over these grounds and for walking along the edge of the lake. Boys had made a practice of so using it and as a place for boating, fishing, and swimming. The evidence fully justified the jury in finding that appellant's agents and servants knew that the premises were being so used. It appears that there was a fence along the south line of appellant's grounds, abutting on Polk street, but the evidence is in conflict as to whether or not the fence extended onto the breakwater, and the jury may well have found that this end of the breakwater was unobstructed and open so that people could pass without interference in going to and from the street onto the railroad grounds, and that an open passageway over the breakwater was thus afforded them. In the light of such facts and circumstances it cannot be said that persons who passed onto the breakwater and adjacent grounds were there under such forbidding circumstances as to make them trespassers. It seems reasonably clear that people customarily used this place as a footpath and that boys especially used it as a place for the purposes of boating and swimming. These uses of the premises must be held to have been within the knowledge of the railroad's agents and servants and that an implied permission existed which justified persons in so using the breakwater and adjacent grounds. Under these circumstances the persons so passing over this place on these premises cannot be considered trespassers; they must be considered as having entered onto the premises with the implied permission of the railroad company for the customary purposes. The license to so use the

premises implies permission to so use them, and the railroad company cannot now be heard to charge that such use constitutes a trespass. Under these circumstances persons making such customary use of the premises are licensees.

The evidence sustains the claim that the decedent, at the time of injury, was using this place in the customary way, namely, as a footpath in passing over the breakwater, and his relation to the railroad company was that of a licensee. See *Hupfer v. Nat. D. Co.* 114 Wis. 279, 90 N. W. 191; *Gorr v. Mittlestaedt*, 96 Wis. 296, 71 N. W. 656; *Muench v. Heinemann*, 119 Wis. 441, 96 N. W. 800. With this relation existing between the appellant and the decedent, the legal duty devolving on the company is as recognized and declared in the *Muench Case*, that a licensee must be deemed to take the premises as he finds them, "and the licensor owes him no duty, save to refrain from acts of active negligence rendering the premises dangerous." The case of *Klix v. Nieman*, 68 Wis. 271, 32 N. W. 223, is not at variance with this rule. The facts of that case show that the danger complained of was one connected with an unfenced natural pond on a private lot, but so remote from the street and sidewalk as not to make their use dangerous; nor was it shown that the owner had done anything to this pond to create a pitfall or snare liable to injure persons going onto the lot. In the instant case the facts are different, in that the alleged dangerous condition was created by the company, and the question is whether or not, in view of the fact that the company knew or ought to have known that both adults and children were resorting to and using the place for travel and amusement, the omission to keep the pit covered created a danger likely to cause injury to persons so using the premises with ordinary care. That the opening or hole in the cover of the steam pit, as described in the evidence, was dangerous seems self-evident from its very nature and condition. It is also clear that the hole in the planking that covered the excavation was not readily observed, and was ob-

scured by the steam rising therefrom through this hole and the cracks between the planks covering the pit. This condition of the place made the pit a dangerous trap or pitfall to persons on the premises, and the omission to observe and repair the planking constitutes active negligence on the part of the railroad toward them.

It is contended that it is not shown that the company was negligent in permitting this hole to exist, because it had no notice or knowledge thereof prior to the day of the accident. The evidence discloses that a hole had been observed by various persons two or three months, one month, two weeks, and on the day before the accident. These evidentiary facts furnish a sufficient basis for the conclusion of the jury that the railroad company was guilty of a want of ordinary care in failing to discover the hole in the plank covering over the steam pit and in neglecting to repair it before the time of the accident.

It is probable that the decedent had not observed the hole. His conduct in this respect must be viewed in the light of his age and the surrounding conditions and of the danger, and when so considered it cannot be held as matter of law to show that he was guilty of contributory negligence in producing the injuries complained of. Cases illustrating the principles and grounds of liability under the circumstances disclosed here are *Kinchlow v. Midland E. Co.* 57 Kan. 374, 46 Pac. 703; *Penso v. McCormick,* 125 Ind. 116, 25 N. E. 156; *Union Pac. R. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619.

We find no reversible error in the record.

*By the Court.*—Judgment affirmed.