LEWKO, by guardian *ad litem*, Appellant, vs. CHAS. A. KRAUSE MILLING COMPANY, Respondent.

*November 10—December 5, 1922.*

*Negligence: Licensees and trespassers: Invitees: Child falling into open steam pit: Liability of landowner: Pleading.*

1. As against a general demurrer, the allegations of a complaint must be construed most favorably to plaintiff.
2. A complaint in an action to recover for injuries to a child who fell into an open steam pit on defendant's premises which alleged that children were in the habit of playing on defendant's land to its knowledge—from which it might be implied with its permission—does not show that the plaintiff was there by invitation. At most he was a licensee on private property.
3. A mere licensee on private property takes the premises as he finds them, the owner owing him no duty save to refrain from active negligence rendering the premises dangerous.

4. Useful and not grossly negligent conditions and appliances on private property do not render the owner liable to mere licensees or trespassers, and the steam pit—open, obvious, and useful, although also dangerous—cannot be classed as a hidden trap or death-dealing instrumentality.

CROWNHART, J., dissents.

APPEAL from an order of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Affirmed.*

Action to recover damages for injuries sustained by a boy four and one-half years of age who fell into a steam pit located upon defendant's premises. The complaint alleged, among other things, that

"The defendant is the owner of a large piece of real estate upon which stands its mill, and has considerable real estate surrounding the said mill. That outside of its mill and on a part of its real estate which is not fenced and which is open and accessible to every one and especially to children who are in the habit to play thereon, which heretofore maintained a large hole about three feet in diameter and about five or six feet deep, and that said hole was connected with the mill of the defendant by a pipe and was frequently filled with hot or boiling water, and that the said pipe carried from said mill hot steam into the said hole. That the said mill is located in a thickly populated residence district containing many children and that the said real estate where said hole was located was known to the defendant to be constantly frequented by children who used said vacant property for the purpose of play, games, and recreation. That the said real estate and said hole heretofore described was of such a character and in such condition that it was attractive to children and was so situated that it was likely to and known to the defendant to be likely to and that it did constantly attract small children to play thereon, and that children habitually played on said real estate and around and about the said hole. That the said *Anton Lewko, Jr.,* together with a number of other small children of approximately his own age, played on said real estate and around and about the said hole, and that the said *Anton Lewko, Jr.,* fell into the said hole and was burned and scalded by the hot water and steam therein and injured. That the defendant was negligent in failing to provide any

warning, guards, or means of preventing children from using the said real estate or playing around about or in the said hole heretofore described. That the said injury to the said *Anton Lewko, Jr.,* was caused solely and proximately by the negligence of the defendant in failing to prevent children from frequenting the said real estate and playing in and about the hole and in failing to provide any warning, guard, fence, or appliance of any kind which would reasonably protect and prevent children from playing around and about the said hole."

The defendant entered a general demurrer to the complaint which was sustained. From an order entered accordingly the plaintiff appealed.

For the appellant there was a brief by *Richter & Nebel* of Milwaukee, and oral argument by *A. W. Richter.*

For the respondent there was a brief by *Freeman & Bendinger,* attorneys, and *George C. Hofer,* of counsel, all of Milwaukee, and oral argument by *Mr. Hofer.*

VINJE, C. J. We are again called upon to distinguish between cases where the plaintiff is a trespasser or mere licensee and where he is an invitee or where he has a right to be, as in a public street or highway. Here the allegations of the complaint, construed most favorably to the plaintiff, as they should be, make him out at most only a licensee. He was on private property, perhaps with the knowledge of the defendant and perhaps not. All the complaint alleges is that children were in the habit of playing on defendant's land to its knowledge, not that it knew plaintiff played on its land, but it can be implied from this that it permitted them to do so. But mere permission or license does not imply invitation. *Muench v. Heinemann,* 119 Wis. 441, 447, 96 N. W. 800. So that at most he was only a licensee on private property. The law is well settled in this state and in most of the sister states that a mere licensee on private property takes the premises as he finds them. The owner owes him no duty save to refrain from active negligence rendering the premises dangerous. *Cahill v. Layton,*

57 Wis. 600, 16 N. W. 1; *Muench v. Heinemann,* 119 Wis. 441, 96 N. W. 800; *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664; 20 Ruling Case Law, 51 *et seq.* The same rule applies to trespassers. *Zartner v. George,* 156 Wis. 131, 145 N. W. 971; *Emond v. Kimberly-Clark Co.* 159 Wis. 83, 149 N. W. 760; 20 Ruling Case Law, 57 *et seq.*

Where this court has held a defendant liable for a dangerous condition of premises as to licensees or trespassers it has been in cases such as *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60, and *Ptak v. Kuetemeyer,* 177 Wis. 262, 187 N. W. 1000, where the dangers were in public streets where children had a right to be; or in cases where the danger constituted a hidden death trap as did the electric wires in *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008, or an obscured pitfall in a licensed pathway as in *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664, which was held to constitute active negligence.

Useful and not grossly negligent conditions and appliances on private property do not render the owner thereof liable to mere licensees or trespassers. To do so they must be of such a character as to constitute active negligence. The pit in question was open, obvious, and useful, and though dangerous to children, and perhaps to adults also, it cannot be classed as a hidden trap or a concealed death-dealing instrumentality.

*By the Court.*—Order affirmed.

CROWNHART, J. (*dissenting*). This is an appeal from the order sustaining a general demurrer to the complaint. It appears from the complaint that the defendant corporation was the owner of a mill situated on a piece of unfenced land surrounding its mill. The mill was in a thickly populated residence district containing many children, and the children frequented the land surrounding the mill to

Lewko v. Chas. A. Krause Milling Co. 179 Wis. 83.

play games and for recreation, to the knowledge of defendant. The place was attractive to children, as it naturally would be, and it did constantly attract small children, who habitually played on such land. The defendant maintained a hole near the mill, which was about three feet across and about six feet deep, which was connected to the mill by a pipe, through which hot water and steam were deposited in the hole, and such children played around such hole to the knowledge of the defendant. The hole was not guarded in any way, there were no warning signs put up, and no efforts made to prevent children from playing on the real estate or to keep them from falling in the pit of hot water. The plaintiff, four and one-half years old, who had been attracted to the place with other children, fell into the hole and was badly scalded and crippled for life.

For the purposes of our decision we must assume the complaint to be true; and the allegations must be liberally construed in favor of the plaintiff. *Herrem v. Konz,* 165 Wis. 574, 577, 162 N. W. 654.

The one question before us is whether the owner is liable for injuries to a little child, enticed upon the land of the owner by its attractiveness for play, and while playing thereon is injured by an artificial, dangerous contrivance which the owner maintained knowing of its dangerous character, having knowledge that the premises were attractive to children, that children habitually came to play and did play around such dangerous contrivance, and where the owner makes no effort whatever to keep the children away from such dangerous pitfall.

We may start with the premise that courts differ on this question. As was said by Mr. Justice CLARKE of the United States supreme court, Mr. Chief Justice TAFT and Mr. Justice DAY concurring, in a recent case:

"The courts of our country have sharply divided as to the principles of law applicable to 'attractive nuisance' cases, of which this one is typical.

"At the head of one group, from 1873 until the decision of today, has stood the supreme court of the United States, applying what has been designated as the 'humane' doctrine. Quite distinctly the courts of Massachusetts have stood at the head of the other group, applying what has been designated as a 'hard doctrine'—the 'Draconian doctrine.'" *United Z. & C. Co. v. Britt,* 258 U. S. 276, 42 Sup. Ct. 300.

In the case then before the United States supreme court there was no claim that children were habitually at play on the private premises or that the defendant had knowledge thereof, and the children injured were strangers to the neighborhood. The court did not overrule any former decisions on the subject of attractive nuisances.

Thompson, Comm. on Neg. (2d ed. vol. 1, § 1026) has this to say:

"One doctrine under this head is that if a child trespasses upon the premises of the defendant, and is injured in consequence of something that befalls him while so trespassing, he cannot recover damages, unless the injury was *wantonly inflicted,* or was due to the *recklessly careless* conduct of the defendant. This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts *property* above *humanity,* leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any measure of duty towards him which they would not owe under the same circumstances towards an adult."

In a note he adds:

"This is said with full knowledge of the old common-law rule—still barbarously adhered to—that children, even of tender years, are civilly liable for their trespasses."

This is strong language, but is it too strong? Is it not wicked and barbarous for a person to maintain a hole three feet across and about six feet deep, filled with hot

Lewko v. Chas. A. Krause Milling Co. 179 Wis. 83.

water, upon his premises, where little children of the age of four and one-half years are at play, under circumstances from which it may well be held that an implied invitation has been extended to them? If so, is it not harsh and unreasonable to hold that a child of such tender years is a trespasser and wrongdoer because, forsooth, he is attracted to play where all children would be attracted to play under similar circumstances? As the supreme court of Texas said:

"They [children] are not trespassers or intruders within the meaning of the law, until they are old enough and intelligent enough to know and appreciate the right of the proprietor to exclude them from his premises by a simple command. They understand that they are required to keep out, only when they cannot get in. They pause not to read signs of warning or to inquire if they are welcome. Their little hearts tell them they are welcome everywhere, and they must be protected from dangers they know not of." *Dublin C. Oil Co. v. Jarrard* (Tex. Civ. App.) 40 S. W. 531, 535, aff'd 91 Tex. 289, 42 S. W. 959.

Thompson further says (§ 1049):

"One court advances the theory that those who thus expose attractive objects to the temptation of children are regarded as holding out an *implied invitation* to them to come upon the premises, and play with such objects." *Pekin v. McMahon,* 154 Ill. 141, 39 N. E. 484.

Children of the tender years of four and a half are incapable of discretion. Theirs is "the law of perfect liberty." They wander at will on vacant property for play. Every open place in a populous district is an invitation to the children for childish games. They cannot understand the invisible line of private property, the crossing of which we are asked to hold makes them outlaws subject to all the pitfalls that a careless and reckless owner may dig for their undoing. We are asked to carry the principles established by the feudal barons to protect game from peasant poachers

too far.   That would be projecting the laws of the dark
ages into a land of Christian civilization, to cling to a law
rejected by the courts in the land of its birth since 1841,
and rejected by the supreme court of the United States
since 1873.    Humanity recoils from such a doctrine—a
doctrine that legalizes injury and death to helpless children
through the negligence of grown people, with full under-
standing of the consequences of their acts.

It is this harsh rule of law—the "Draconian doctrine"—
to which this court is now asked to commit itself.   As I
read the cases, we are asked to go further than this court
has ever gone before in applying this hard doctrine.   Indeed,
this court has held squarely to the contrary.   *Brinilson v.
C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664; *Herrem
v. Konz,* 165 Wis. 574, 162 N. W. 654.    In the *Herrem
Case* there were children of tender age, living in the vicinity
of a mill, who were in the habit of playing under the mill,
where there was an unguarded revolving shaft.    A child
was caught on the shaft and injured.   This court held the
children were licensees and not trespassers.    In the opinion
of the court, written by the late Mr. Chief Justice SIE-
BECKER, it is said: "Under these circumstances the defend-
ant was bound to anticipate that an injury might result to
some child by coming in contact" with such shaft, citing the
*Brinilson Case* as authority.

In the *Brinilson Case* the defendant had built a break-
water on its private grounds and covered it over with plank,
which children were accustomed to resort to for boating,
fishing, and swimming, to the knowledge of the defendant.
A boy fell into a steam pit by reason of a plank being re-
moved some three weeks previously.   Judgment for plaint-
iff was sustained, and in the opinion Mr. Justice SIEBECKER
held that the boys were not trespassers but licensees, although
a warning had been posted, "No Thoroughfare," and boys
had been expelled from the premises.   The court said:

"This condition of the place made the pit a dangerous

5]  AUGUST TERM, 1922.  91

Lewko v. Chas. A. Krause Milling Co. 179 Wis. 83.

trap or pitfall to persons on the premises, and the omission to observe and repair the planking constitutes active negligence on the part of the railroad company toward them."

Other cases supporting the humane doctrine are *Lynch v. Nurdin,* 1 Q. B. 29; *Railroad Co. v. Stout,* 17 Wall. 657; *Union Pac. R. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619; *Pekin v. McMahon,* 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206; *Baxter v. Park,* 44 S. Dak. 360, 184 N. W. 198; *Hydraulic Works Co. v. Orr,* 83 Pa. St. 332, approved in *Gramlich v. Wurst,* 86 Pa. St. 74; *Penso v. McCormick,* 125 Ind. 116, 25 N. E. 156, 9 L. R. A. 313. Many others might be cited. The authorities are abundant for applying the humane doctrine, and we are not put to the necessity of originating any new principle of law. We have the opportunity of following well considered cases and on principles laid down by the United States supreme court, as well as well considered cases in this court.

In the 48th year of George III, an Englishman baited traps with strong-smelling meat and placed them on his own land to catch "vermin," but he caught, among other vermin, the plaintiff's dogs, and was sued for damages and plaintiff recovered. Lord ELLENBOROUGH in his opinion said:

"Every man must be taken to contemplate the probable consequences of the act he does. And therefore when the defendant caused traps scented with the strongest meats to be placed so near to the plaintiff's house as to influence the instinct of those animals and draw them irresistibly to their destruction, he must be considered as contemplating this probable consequence of his act." *Townsend v. Wathen,* 9 East, 276, 280.

The supreme court of the United States, commenting on this decision, quoted approvingly the language of 1 Thompson, Negligence, 305, note, as follows:

"It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited

with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life."

All of which goes to show that in the land from which we draw our common law they think well of their dogs. But little children are drawn just as instinctively to play in vacant lots in populous cities as dogs are drawn to the bait.   See opinion of Mr. Chief Justice WINSLOW on this subject, *Busse v. Rogers,* 120 Wis. 443, 454, 98 N. W. 219.

For my part, I feel impelled to follow the reasonable doctrine that a person shall take reasonable care to protect little children anywhere and everywhere.   The Lord said: "Suffer little children to come unto me and forbid them not."   This is the spirit of Christianity and the spirit of all religion, and it is the spirit of the law. *Sic utere tuo ut alienum non lædas:* one must use his own property so as not to infringe on the rights of others.   Such is an ancient maxim of the law.

"As a general rule the owner of land has the right to the sole use and occupation of it, but such use and enjoyment of it must be exercised with a due regard for the public good and with a reasonable and humane regard for the welfare and rights of others." *Penso v. McCormick,* 125 Ind. 116, 25 N. E. 156, 9 L. R. A. 315.

The object of the law is to do justice, and justice is not done when little childen—*non sui juris*—are enticed into places of grave danger with no warning of the danger and no guard to protect them.   How simple it would have been for this defendant to have put a cover over this pit to protect these children.   It was negligence not to do so; I think it was gross negligence.   "Safety first" has been

preached as a doctrine for many years, and now we are urged to abandon the very foundation principles of safety.

There is another reason why the complaint is good, and that is, the mill and surroundings were a place of employment. In the instant case the court holds the children were licensees and not trespassers. It is no stretch of the law to say that these children were not trespassers but that they were invitees. I think they were on the land by right of implied invitation. As licensees these children come within the meaning of "frequenters" as used in the Wisconsin statutes, and the defendant is liable under the statutes if not under the common law. The mill was run by employees of the defendant corporation. That is to be fairly inferred from the complaint. As to such places of employment the statute fixes certain liabilities. Sec. 2394—48, Stats., provides:

"Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

The term "place of employment" is defined by sec. 2394—41, Stats., to "mean and include every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business, is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on."

The term "frequenter" is defined by the same section to "mean and include every person, other than an employee, who may go in or be in a place of employment or public

building under circumstances which render him other than a trespasser."

These statutes were enacted in 1911 for the purpose of safeguarding the persons of frequenters as well as employees. The law recognizes that persons licensed or permitted to go upon the premises of another have certain rights which the owner is bound to respect. In other words, it put into the statutes the humane doctrine of the courts, and wiped out the Draconian doctrine so far as licensees or invitees are concerned. As applied to this state it recognized and approved the doctrine of *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664. In that case the court said:

"In the instant case the facts are different, in that the alleged dangerous condition was created by the company, and the question is whether or not, in view of the fact that the company knew or ought to have known that both adults and children were resorting to and using the place for travel and amusement, the omission to keep the pit covered created a danger likely to cause injury to persons so using the premises with ordinary care."

And this language in that case fully applies here. Here the hole was maintained by the defendant and it was not a natural condition. It was an artificial, dangerous pit created by the defendant. The demurrer should have been overruled.

For the reasons stated I respectfully dissent from the opinion of the court.