**Ann WARNER, Plaintiff,**

v.

**Leo LIEBERMAN and Eleanor Lieberman, Defendants.**

No. 56–C–237.

United States District Court
E. D. Wisconsin.

Sept. 17, 1957.

N. Paley Phillips, Milwaukee, Wis., for plaintiff.

John F. Zimmermann and Shaw, Muskat & Paulsen, Milwaukee, Wis., for defendants.

GRUBB, District Judge.

This matter is before the court on defendants' motion for summary judgment, pursuant to Fed.Rules Civ.Proc. rule 56, 28 U.S.C.A., based upon the records, files, depositions and affidavit of the defendant Eleanor Lieberman. There have been filed in opposition to the motion, an affidavit of the plaintiff and an affidavit of Aaron Starobin, one of her attorneys.

On this motion only the facts most favorable to the plaintiff and the most permissible inferences from those facts need be considered. The court is not authorized to determine issues of fact or permissible inferences in considering this motion.

There is some conflict and inconsistencies between the testimony of plaintiff in her deposition and her affidavit filed in opposition to this motion. The court can consider on this motion only the portions most favorable to her, regardless of how much of her testimony in the deposition may be in conflict or inconsistent with her affidavit.

Taking the portions of the record by way of depositions and affidavits most favorable to the plaintiff, it appears that she was the gratuitous house guest of defendants, she being a sister of the defendant, Leo Lieberman. She arrived at the home of the defendants on July 1, 1956 from California. On July 12, 1956 she sustained the injuries for which she brings this suit. She had been seated on a chaise longue in the yard of the defendants. Defendant Leo Lieberman was grilling steaks. Defendant Eleanor Lieberman was in the house. This

chaise longue had never previously been used by the plaintiff. She had seen it but did not observe anything wrong with it. The back of the chair portion of the chaise longue was toward the south and the footstool portion was to the north. Plaintiff was facing west with her back toward the home of the defendants. She sat on the chaise longue for a short period of time and then heard her brother, Leo Lieberman, call for her to come and eat. The portion of the chaise longue where one sits is considerably lower than the average chair, and in order to get up, one has to push on the edge of the longue in order to get the body up. As she pushed herself off and walked around the front of the chaise longue, or to the north, she had taken only a step or two when she fell because her right foot became entangled in the leg of the chaise longue which was loose and not fastened and "which apparently was pushed to the west" as she got off the chaise longue. As she sat on the chaise longue, she could not notice that the leg was loose. The loose leg of the chaise longue swiveled in a clockwise direction and pulled away from the seat as she was walking around the front and it caught her right leg, tripping her. At the time she was seated on the chaise longue, its leg was in a normal position. In her affidavit, plaintiff states that there was no opportunity to see the defective leg which had swiveled from the front of the chair before she tripped. Photographs of the chaise longue are attached to and made a part of plaintiff's affidavit, which photographs indicate that it is a very common type of aluminum and plastic garden chaise longue.

The affidavit of Aaron Starobin states that he examined the chaise longue on August 20, 1957; that there were a total of three screws missing from the stool portion of it, that originally the front legs were attached by four screws, two on each side, and that at the time of his examination, thirteen months after the injury, only one screw remained which was on the right-hand side; that

he sat on it and in getting up, the stool portion could be seen to swing out from the chair portion in a clockwise fashion.

The testimony of defendant Leo Lieberman in his deposition indicates, among other things, that during the winter prior to the accident, the chaise longue had been stored in the basement; that when he took it out in late May or early June, the front portion of the front leg was not fastened to the footstool portion of the chaise longue; that the support should have been fastened to the footstool portion on the left side and the right side; that the left front side was not fastened, that a screw and bolt were missing; that when it had been stored the previous fall, it was in bad shape; that he noticed that it needed fixing but that he had not fixed it. That when he took it out in the spring, he again noticed that it was not working and that it required repair. That if he would put the support underneath the frame, it would stay there and hold, but that it wouldn't hold solidly; that if the footstool portion was pushed slightly, the support leg would come loose; that he knew a person could fall on the leg that was loose and that it would move when a person was either about to sit in it or get up from it.

The affidavit of Eleanor Lieberman set forth that she knew there were several screws missing from the chaise longue in the summer of 1956 and prior to the accident; that she and the child of the defendants used the chaise longue during that time with the screws missing, and to the best of her knowledge no one had ever been injured because of the condition of the chaise longue before plaintiff's accident. That she did not see the legs of the chaise longue protruding or extending beyond the front or side of the chaise longue before the accident, although she did see the legs of the chaise longue protrude after the accident when the plaintiff was entangled in the chaise longue. That prior to the accident she had used the chair carefully, being aware of its condition, and that

she had never told the plaintiff of its damaged condition.

The ultimate facts most favorable to the plaintiff which could be found by a jury may be summarized as—

(a) A chaise longue with three missing screws or bolts on the part that the occupant uses as a foot rest so that on occasion and given the right impetus, that part would swing out.

(b) This condition existed for two summer seasons.

(c) There had been no previous injury or untoward incident in the use of this chaise longue.

(d) Defendants were aware of this condition and, notwithstanding that condition, used the chaise longue.

(e) Plaintiff was not aware of that condition.

(f) Defendants did not inform plaintiff of that condition.

(g) Plaintiff was a gratuitous guest of defendants.

■ This question must be tested by the law in Wisconsin, it being a diversity case, and the acts having happened in Wisconsin.

The leading case involving host and guest in Wisconsin is the case of Greenfield v. Miller, 173 Wis. 184, 180 N.W. 834, 836, 12 A.L.R. 982. In that case plaintiff was defendant's gratuitous guest. Defendant's floors had been recently finished, were highly polished and had had oriental rugs thereon. While walking through the house, plaintiff slipped on a small rug about four feet square and sustained injuries. On motion of defendant, the trial court directed a verdict in defendant's favor. The Supreme Court affirmed. Plaintiff's counsel urged that the question was whether defendant was negligent, a question of ordinary care. Plaintiff urged that it was defendant's duty to render the premises reasonably safe for guests. The court points out that plaintiff's counsel was endeavoring to bring the case within the legal definition of invitor and invitee or licensor and licensee where

there would be liability for active negligence.

■ After reviewing cases in Wisconsin and elsewhere, the court points out that the legal distinction between implied invitor and invitee and a mere licensor and licensee is well-marked by the decisions, "the general rule being that there is no liability on the part of the licensor for injury sustained by those coming on his premises as mere licensees, unless there is something on the premises in the nature of a trap, which fact proximately caused the injury, or the licensor was guilty of active negligence." And, again on page 189 of 173 Wis., on page 836 of 180 N.W. the court states:

"* * * He (a guest) stands on no better footing than the bare licensee, and must take the premises as he finds them, subject, however, to the limitation that the licensor must not set a trap or be guilty of active negligence which contributed to the injury." (Parenthesis supplied.)

The court quotes with approval from Plummer v. Dill, 156 Mass. 426, 31 N.E. 128, as follows:

"'* * * The principle of the decision seems to be that a guest, who is receiving the gratuitous favors of another, has no such relation to him as to create a duty to make the place where hospitality is tendered safer or better than it is. * * *'"

And, again at page 190 of 173 Wis., at page 837 of 180 N.W. the court states:

"Of course in the class of cases last above mentioned, it must appear that the licensor was not guilty of any wilful act of negligence or any new danger created by the licensor. As stated in other cases, where the relation of licensor and licensee exists, the licensee can only recover for setting a trap or for active negligence.

"The court is of opinion that in the instant case the relation of licensor and licensee, under the allega-

tions of the complaint, existed under the general rule that, where a guest is invited to come into the premises of the host for social or benevolent purposes only, the relation thus created is one of licensor and licensee and the rule of ordinary care does not apply."

The rule of Wisconsin Courts in relation to the duties owed by a host to a gratuitous guest have been applied in automobile cases even though Wisconsin has no "guest" statute. Thus, speaking of the duty owed to the guest by the host in an automobile case, Cleary v. Eckart, 191 Wis. 114, 210 N.W. 267, 268, 51 A.L.R. 576, the court stated:

> "It is well settled that the guest must accept the premises of the host as he finds them; it being only the duty of the host to warn the guest of lurking dangers."

Following that the court quoted from its decision in O'Shea v. Lavoy, 175 Wis. 456, 185 N.W. 525, 20 A.L.R. 1008, as follows:

> " 'The guest has no right to a greater security than that enjoyed by the host or other members of his family. The host simply places the premises which he has to offer at the disposal and enjoyment of his guest upon equal terms of security.' "

Again, it states the rule in the following language:

> " 'As to the gratuitous guest in a vehicle on a public highway, the owner or driver of such vehicle owes to such guest the duty of exercising ordinary care not to increase the danger to the guest or to create a new danger.'
>
> "When one drives his car to his neighbor's door and invites his neighbor to an automobile ride, does not the neighbor accept the hospitality which the host has to offer? That hospitality consists of the car and the driver. When he accepts the invitation and enters the automobile, does he not accept the car in the condition in which it exists and such skill as may be possessed on the part of the driver? * * *"

It recently applied that rule even where the relationship was not that of host and guest but licensor and licensee. In Brady v. Chicago & N. W. R. Co., 265 Wis. 618, 62 N.W.2d 415, 417, the court stated:

> " * * * Under such circumstances the users of the bridge are gratuitous licensees rather than trespassers, but licensees take the premises as they find them and the owner owes them no duty except to refrain from injuring them by active negligence. * * *"

In Lewko v. Chas. A. Krause Milling Co., 179 Wis. 83, 190 N.W. 924, 925, the court stated:

> " * * * The law is well settled in this state and in most of the sister states that a mere licensee on private property takes the premises as he finds them. The owner owes him no duty save to refrain from active negligence rendering the premises dangerous. * * *
>
> "Useful and not grossly negligent conditions and appliances on private property do not render the owner thereof liable to mere licensees or trespassers. To do so they must be of such a character as to constitute active negligence. The pit in question was open, obvious, and useful, and though dangerous to children, and perhaps to adults also, it cannot be classed as a hidden trap or a concealed death dealing instrumentality."

While this case must be determined under the law of Wisconsin, it is apparent that the Wisconsin rule is in accord with the general rule in many, if not most, jurisdictions. Thus it is stated in 25 A.L.R.2d 600, in an annotation entitled *"Liability for injury to guest in home or similar premises"*—

> " * * * In summary, some of the courts have equated the rule of legal liability with that of homely hospitality, saying that the host

should treat the guest as a member of the family, and the guest, on the other hand, should accept the conditions ordinarily prevalent in his host's home without cavil or complaint."

And the general rule is stated in 65 C.J.S. Negligence § 35, pp. 495 and 496, as follows:

" * * * A social guest on the host's premises or in his home must take the premises as he finds them, with no greater right than a mere licensee with respect to the host's liability for injuries to the guest.

"Accordingly, in the absence of statute imposing such duty, the owner or person in charge is ordinarily under no duty to use ordinary care to make or keep the property or premises in a reasonably safe condition for the use of licensees, or to keep the usual condition of the premises up to any particular standard of safety; nor is he under any obligation to take any measures to protect mere licensees from injury due to the condition of the property, or from dangers incident to the ordinary uses to which the premises are subject. There is ordinarily no duty to provide safeguards for licensees, even though there are dangerous holes, pitfalls, obstructions, or other conditions near to the part of the premises to which the permissive use extends. It follows that, as a general rule, the owner or person in charge of property is not liable, as for negligence, for injuries to licensees due to mere defects or dangers in the condition of the property or premises, or, as it has been expressed, due to passive negligence or acts of omission."

Wisconsin, as is true in many states, has passed and there is in effect, a so-called "safe place statute", W.S.A. §§ 101.06, 101.07, placing heavy burdens on the owners of public buildings and employers with reference to safety. Employers, under this statute, are required to have furniture in good repair. If

the rule as between host and guest, where the smallest degree of care is required, were as urged by plaintiff's counsel, there would have been no need for a safe place statute as everyone, owners of public buildings, employers, as well as private homes, would be required to use ordinary care to see that the premises and the furniture were safe for guests.

It is not uncommon to have furniture that is out of repair and yet is useful and usable. The law of Wisconsin is not such as to place a requirement to avoid ordinary negligence on the part of the home owner with reference to his guests.

Neither counsel has cited, nor has the court been able to find any Wisconsin decisions definitely defining the term "trap", or the term "active negligence" as applied by the Wisconsin Supreme Court in host and guest cases.

Among other holdings, it has been held that a stairway in a home with a door opening forward is not a trap. Tempest v. Richardson, 5 Utah 2d 174, 299 P.2d 124. A structural defect in a stairway which gave the second step the appearance of the first step, was not a trap. McHenry v. Howells, 201 Or. 697, 272 P.2d 210.

While cases in other jurisdictions are not in point, it is interesting to note that in the following cases the court held that defects were neither a trap nor active negligence:

A guest tripping over defective weather stripping on the doorsill, Roth v. Prudential Life Ins. Co. of New York, 266 App.Div. 872, 42 N.Y.S.2d 592; a child falling over a wooden stake left in the ground a month after it was used by the landowner, Passer v. Schimmel, Sup., 158 N.Y.S.2d 694; a guest being injured when a crudely constructed loose stone in a walk rolled loose while the guest stepped on it, causing him to fall, Wilder v. Ayers, 2 A.D.2d 354, 156 N.Y. S.2d 85; a guest being injured because of broken concrete in the passageway owned by the defendant, Comeau v. Comeau, 285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002; a guest catching the heel of her shoe in a broken register, Colvert

v. Ricker, 314 Mass. 138, 49 N.E.2d 459, 147 A.L.R. 647.

It has been held that active negligence relates to activities conducted on premises, whereas passive negligence denotes negligence which permits defects or causes dangers upon property. Wolfson v. Chelist, Mo.App., 278 S.W.2d 39. Accord Potter Title & Trust Co. v. Young, 367 Pa. 239, 80 A.2d 76. Acts involving condition of premises are usually passive negligence. Colgrove v. Lompoc Model T Club, 51 Cal.App.2d 18, 124 P.2d 128.

Failure of an employer to discharge the duty of furnishing employees with tools and his failure to use reasonable care in that respect is passive negligence. Stallings v. Whisenant, Tex.Civ.App., 159 S.W.2d 559. Failure to remove a box placed in a skating rink was passive negligence. Dixon v. McDonald, Tex.Civ.App., 130 S.W.2d 884. Failure to fasten screens tightly is not active negligence. Chelefou v. Springfield Inst. for Savings, 297 Mass. 236, 8 N.E.2d 769.

In some jurisdictions the test is laid down as to whether the host realizes that the condition involves an unreasonable risk to the guest. While that is not the rule in Wisconsin, and even if it were, one would be loathe to hold that a jury could find that a condition of a chair which had been satisfactory to the family of the owner for two years and on which no one had previously been hurt or had any trouble created an unreasonable risk to the guest.

The foregoing makes it unnecessary to consider the other point urged by the defendants, namely, that it would be permitting speculation on the record here made to permit a jury to find that the unbolted chaise longue was the actual cause of plaintiff's fall. Defendants' motion for summary judgment is hereby granted.

### Addendum

Since the foregoing opinion was transcribed, plaintiff's counsel in a letter of September 11, 1957, has cited the case of Rushton v. Winters, 331 Pa. 78, 200 A. 60, and in a letter of September 13, 1957, the case of Malmquist v. Leeds, 245 Minn. 130, 71 N.W.2d 863. As before pointed out, this matter must be determined under the law of Wisconsin, and the law of other jurisdictions is not in point. Nevertheless, in the Rushton case, where there was a defective, unsafe railing, nine feet above a concrete driveway, it should have been apparent that an unreasonable risk of harm was involved; that the condition could be classified as a trap. It is in no way comparable to the situation here involved.

In the Malmquist case, there was an excavation which was obviously very dangerous. By its very nature it constituted a serious risk to any visitor who attempted to use the back entrance. The defendants realized the danger involved. Again, the situation was not, in the opinion of the court, comparable to the present problem.