Ann WARNER, Plaintiff-Appellant,

v.

Leo LIEBERMAN and Eleanor Lieberman, Defendants-Appellees.

No. 12160.

United States Court of Appeals
Seventh Circuit.

March 3, 1958.

N. Paley Phillips, Milwaukee, Wis., Bertram J. Hoffman, Milwaukee, Wis., of counsel, for appellant.

John F. Zimmermann, Milwaukee, Wis., Shaw, Muskat & Paulsen, Milwaukee, Wis., of counsel, for appellees.

Before FINNEGAN, SCHNACKEN-BERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff, Ann Warner, sued Leo and Eleanor Lieberman, defendants, for damages occasioned by the alleged negligence of the defendants in the care and maintenance of a chaise lounge [1] which belonged to defendants, and which was on their premises. Defendants were the hosts and plaintiff was their guest. The district court sustained defendants' motion for summary judgment and entered judgment dismissing the action on the merits,[2] from which this appeal has been taken. Error is charged in the granting of the motion for summary judgment, in considering which the district court had before it the pleadings, various depositions and affidavits.

Beginning July 1, 1956, plaintiff was a gratuitous house guest of defendants, she being a sister of defendant Leo Lieberman. On July 12, 1956, plaintiff sat on the chair portion of the lounge in the yard of defendants. Defendant Leo was grilling steaks and defendant Eleanor was in the house. The lounge had never previously been used by plaintiff nor had she ever observed anything wrong with it. Leo called for her to come and eat. Plaintiff pushed herself off the lounge and started to walk around the front of it. She had taken only a step or two when she fell. As plaintiff sat on the lounge, she could not notice that a leg was loose. As she pushed the lounge in getting up, she caused the leg to turn in a swivel or clockwise action and pull away from the lounge so that as she was walking around to the front, it caught her right leg and tripped her. At the time plaintiff was seated on the lounge its leg was in a normal position. In plaintiff's affidavit, she sets forth there was no opportunity to see the defective leg which had swiveled from the front of the chair before she tripped.

On August 20, 1957 one of plaintiff's attorneys examined the lounge. It appeared that there were three screws missing from the stool portion; that originally the front legs were attached by four screws, two on each side, and that, at the time of his examination, only one screw remained, which was on the right-hand side; that from a sitting position on the stool when the legs were pushed below it, one would not know that it was unsafe; that, upon standing up and pushing the lounge to one side in order to get up, the metal legs attached to the stool portion *could be seen* to swing out in a clockwise fashion and could easily cause one to trip.

During the winter prior to the accident, the lounge had been stored in the basement; prior to storing Leo had noticed the defective front leg with the bolts missing; when he took it out in May or early June, the front portion of the front leg was not fastened to the footstool portion of the lounge; on the left front side a screw and a bolt were missing; if the stool portion was pushed slightly, the support leg would come loose; he knew a person could fall on the leg that was loose and that it would move when a person was either about to sit on it or was in the process of getting up from it; he knew that the lounge was

---

1. Herein called "lounge" or "lounge chair".

2. D.C., 154 F.Supp. 362.

dangerous, but he never told plaintiff that fact, and although he knew someone could fall, he did not believe anyone would be badly hurt.

Eleanor knew there were several screws missing from the lounge in the summer of 1956 and prior to the accident. She and the child of defendants used the lounge during that time with the screws missing, and to the best of her knowledge no one had ever been injured because of the condition of the lounge before plaintiff's accident. Eleanor did not see the legs of the lounge protruding beyond the front or side of the lounge before the accident, although she did see the legs protruding after the accident. Prior to the accident, Eleanor had used the chair carefully.

Do these facts, considered in a light most favorable to plaintiff, establish actionable negligence on the part of defendants?

■ The substantive law of Wisconsin applies to this case.

■■ The general rule is that where a guest is invited to come into the premises of the host for social purposes, the relation thus created is one of licensor and licensee and the rule of ordinary care does not apply. Greenfield v. Miller, 173 Wis. 184, 180 N.W. 834, 12 A.L.R. 982. Where the relation of licensor and licensee exists, a licensee can recover only for the setting of a trap by, or for active negligence of, the licensor, ibid. 173 Wis. 190, 180 N.W. 837.

In Lewko v. Chas. A. Krause Milling Co., 179 Wis. 83, 190 N.W. 924, it was held that a mere licensee on private property takes the premises as he finds them and that the owner owes him no duty save to refrain from active negligence rendering the premises dangerous. Active negligence includes the maintenance of a hidden trap, as in Meyer v. Menominee & M. L. & T. Co., 151 Wis. 279, 138 N.W. 1008, a pitfall as in Brinilson v. Chicago & N. W. R. Co., 144 Wis. 614, 129 N.W. 664, 32 L.R.A.,N.S., 359, or a partly concealed, open and unprotected stairway to a lower level, near a point at which an elderly customer was invited to go when she came into defendant's hardware store, as in Lehman v. Amsterdam Coffee Co., 146 Wis. 213, 131 N.W. 362.

■ The licensor does owe to a licensee a duty to refrain from acts of active negligence rendering the use of the premises dangerous to the use of licensee. Masek v. Bubenheimer, 229 Wis. 194, 281 N.W. 924. In the Masek case it appeared that defendant drove a pipe with sharp rough edges into the ground, so that its top was only eight inches above the ground and quite incapable of being seen in the nighttime, without notifying plaintiff or her husband, who were tenants in plaintiff's building on said premises, and plaintiff was injured when she struck her foot against the pipe in the dark. The court held that whether the defendant was guilty of active negligence was for the court to determine under all of the circumstances.

We must not lose sight of the distinction between active negligence and passive negligence. Therefore, the language of 65 C.J.S. Negligence § 35, p. 496 is in point:

"* * * It follows that, as a general rule, the owner or person in charge of property is not liable, as for negligence, for injuries to licensees due to mere defects or dangers in the condition of the property or premises, or, as it has been expressed, due to passive negligence or acts of omission."

■ Undoubtedly the facts indicate that defendants were negligent in failing to repair the lounge before the accident. Such omission is passive negligence, which is not actionable where the relation of licensor and licensee exists, as in this case. In such a situation a licensee cannot recover for injuries sustained as the result of the licensor's failure to exercise ordinary care, supra, 253 F.2d 101.

■ Plaintiff in this court defines a trap as "a hidden danger lurking upon the premises which may be avoided if known." If we accept this definition and

apply it to the occurrence which resulted in plaintiff's injury, we find that, having arisen from the lounge, plaintiff was walking around to the front of it when she fell because her foot became entangled in a loose leg of the lounge which was pushed to the west and north as she got off the lounge. This all occurred in daylight. The protruding leg obviously was clearly apparent as she walked toward it and was tripped thereby. The leg, at the time and just before she tripped over it, was not hidden or lurking and was, therefore, not a trap. Had she been injured by a collapse of the lounge while she sat on it, a different question would have been presented.

We hold that the facts, under Wisconsin law, support the finding and judgment of the district court. There will be an affirmance here.

Affirmed.